659 So.2d 707 (1995)
Matthew WHITE, Appellant,
v.
CITY OF WALDO and Lu Hindery, as Sheriff of Alachua County, Appellees.
No. 93-2975.
District Court of Appeal of Florida, First District.
August 28, 1995.
*708 Richard B. Davis, Jr., and Marianne S. Huestis of Davis & Register, P.A., Gainesville, for appellant.
Jeptha F. Barbour and M. Scott Thomas of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellee City of Waldo.
Julius F. Parker, Jr., of Parker, Skelding, Labasky & Corry, Tallahassee, for appellee Lu Hindery.
BENTON, Judge.
Matthew White brought suit on account of injuries he sustained when the motorcycle he was riding collided with a horse. On the fourth day, the trial was cut short when a verdict was directed in favor of the City of Waldo and Lu Hindery, sued in his official capacity as Sheriff of Alachua County. Appellant contends that a City policeman's efforts to capture the animal proximately caused the accident. He also faults the sheriff's office for dispatching the policeman into unincorporated Alachua County alone, and for not sending help when asked. We believe the sheriff's office's allocation of manpower is a discretionary policy decision which is not open to question in a suit for personal injuries. But we conclude that neither the Sheriff of Alachua County nor the City of Waldo enjoys sovereign immunity for an employee's active, hazard-generating "operational misfeasance," and reverse with directions for a new trial.
With the case in this posture, the standard of review is clear. Granting a motion for directed verdict is "proper only if there was no evidence upon which a jury could find," Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 914 (Fla. 1995), against the party for whom the verdict is directed.
It is appropriate to direct a verdict for the defendant only when the evidence considered in its entirety and the reasonable inferences to be drawn therefrom fail to prove the plaintiff's case under the issues made by the pleadings. Golden v. Morris, Fla. 1951, 55 So.2d 714.
Hartnett v. Fowler, 94 So.2d 724, 725 (Fla. 1957).
[A] party who moves for a directed verdict admits for the purpose of testing the motion the facts in evidence and in addition admits every reasonable and proper conclusion based thereon which is favorable to the adverse party. Dempsey-Vanderbilt Hotel v. Huisman, 153 Fla. 800, 15 So.2d 903 [1943].
Id.
In reviewing the propriety of the trial court's directed verdict, this court must review the facts and inferences to be drawn in a light most favorable to appellant, the nonmoving party. Gant v. Lucy *709 Ho's Bamboo Garden, Inc., 460 So.2d 499 (Fla. 1st DCA 1984).
Jones v. Heil Co., 566 So.2d 565, 566-67 (Fla. 1st DCA 1990). We therefore review and recount "the facts and inferences to be drawn" giving the benefit of any doubt to the plaintiff, against whom the verdict was directed.
Before light on the morning of November 5, 1988, appellant White was northbound on U.S. Highway 301. A few miles north of the limits of the City of Waldo, without warning, a palomino galloped into White's field of vision and his motorcycle's path. White and his motorcycle collided with the horse. Appellant was flung through the air seventy-five feet into a ditch. In landing, he sustained permanent, disabling injuries.
That a horse was loose first came to Officer McGrath's attention when a trucker used a citizens' band radio frequency to report the fact. Officer McGrath radioed a report in turn to the Alachua County Sheriff's Office dispatcher and asked for help. (Officer McGrath's employer, the City of Waldo, with a population of approximately 1,300, did not have its own police dispatcher.)
The dispatcher asked him to proceed to the site to verify the trucker's account. Officer McGrath found the horse standing in the median eating grass. When he told the dispatcher the situation, the dispatcher informed him that no deputies were available and asked him to handle the matter himself. Officer McGrath, who had received no special training in managing stray livestock, did not have a bridle, halter, lasso, rope, or any other pertinent gear.
He first approached the horse on foot. When he got within perhaps five feet, the horse shied and fled, leaving the grassy median and traveling along the line dividing the southbound lanes. Officer McGrath followed in his patrol car. As he got closer, he decided the car's blue lights were spooking the horse. About this time Frank Murry, a truck driver, stopped and offered his assistance. All lights were turned off. At the moment Mr. White appeared on his motorcycle, Officer McGrath was driving the patrol car, chasing the horse, with Mr. Murry seated on the patrol car's hood. Except for the motorcycle's headlight, it was pitch dark.
The trial court granted a directed verdict in favor of both defendants on grounds each had sovereign immunity.[1] "Under the common law, law enforcement officers were considered arms of the King and while an officer might be held liable for his wrongful acts the Government or that branch of the Government for which he acted, could not be held liable on the theory that `The King can do no Wrong', or the theory of Governmental or sovereign immunity." Kennedy v. City of Daytona Beach, 132 Fla. 675, 677, 182 So. 228, 229 (1938). Article X, Section 13 of the Florida Constitution (1968) recognizes sovereign immunity of this kind which, however, it authorizes the Legislature to waive by making "[p]rovision ... by general law for bringing suit against the state." "Section 768.28, Florida Statutes (1993), waives governmental *710 immunity from tort liability `under circumstances in which the state or [an] agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state.' § 768.28(1), Fla. Stat. (1993)." Department of Health and Rehabilitative Servs. v. B.J.M., 656 So.2d 906, 911 (Fla. 1995) For purposes of the statute, "`state agencies or subdivisions' include ... counties and municipalities." § 768.28(2), Fla. Stat. (1993).
A preliminary inquiry where one or more tort defendants raise sovereign immunity as a defense is whether the conduct complained of is tortious. "First, for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct." Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 917 (Fla. 1985). "[T]here can be no governmental liability unless a common law or statutory duty of care existed that would have been applicable to an individual under similar circumstances." Kaisner v. Kolb, 543 So.2d 732, 734 (Fla. 1989).
As the California Supreme Court noted, "`[c]onceptually, the question of the applicability of ... immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity.'" Williams v. State, 34 Cal.3d 18, 22, 192 Cal. Rptr. 233, 235, 664 P.2d 137, 139 (1983) (quoting Davidson v. City of Westminster, 32 Cal.3d 197, 185 Cal. Rptr. 252, 649 P.2d 894 (1982)).
Ibid. The threshold question then is what duty, if any, Officer McGrath would have owed Mr. White, if Officer McGrath had been  as Mr. Murry was  a private citizen who voluntarily set out to capture the horse. Any such duty would, of course, have been owed not to Mr. White alone but to all foreseeably imperilled users of the highway, if any there can be said to have been.
Officer McGrath and Mr. Murry did not own the horse and were not, therefore, under the duty owed by owners of domestic animals to exercise ordinary care to prevent their animals' doing harm. See Restatement of Torts, Second § 518, Comment i (1977) ("If a horse is turned loose in a field that abuts upon a public highway, it may reasonably be anticipated that he will wander onto it, and that, particularly in the night time, his presence there may constitute an unreasonable danger to traffic."); Loeffler v. Rogers, 136 A.D.2d 824, 523 N.Y.S.2d 660, 661 (App.Div. 1988) (horses on highway justified application of res ipsa loquitur in suit against owner).
That Mr. Murry and Officer McGrath, if he had been a private citizen, might be said to have acted as "good Samaritans" does not preclude tort liability.
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm... .
Restatement of Torts, Second § 323 (1965). Even where there is no duty to act, the law imposes a general duty "that the actor, if he acts at all, must exercise reasonable care to make his acts safe for others." Restatement of Torts, Second § 547, Comment b (1965).
If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.
Restatement of Torts, Second § 321(1) (1965). Here plaintiff maintains Officer McGrath ought at least to have turned on his headlights to illuminate the horse as it galloped into the motorcycle's path. "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a ... `zone of risk' that poses a general threat of harm to others." McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla. 1992). If Officer McGrath had been "a private person, [he could have been found to] be liable to the *711 claimant,[2] in accordance with the general laws of this state." § 768.28(1), Fla. Stat. (1993).
A recent decision by our supreme court in an analogous case supports this view. In a case growing out of an automobile accident that occurred during police pursuit of a motorist who had run a red light, our supreme court said:
The statute books and case law, in other words, are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care... . In the present case, we think it manifest that a high-speed chase involving a large number of vehicles on a public thoroughfare is likely to result in injury to a foreseeable victim, and that the discontinuance of this chase by police is likely to diminish the risk. In other words, some substantial portion of the risk is being created by the police themselves, notwithstanding any contributory negligence of the person being chased. Accordingly, we believe the law must recognize a duty in this context even though the accident did not involve a police vehicle.
City of Pinellas Park v. Brown, 604 So.2d 1222, 1225 (Fla. 1992). Because chasing the traffic offender at high speed created a foreseeable risk that the offender would collide with somebody making lawful use of a public thoroughfare, the City was held liable.
Some acts or decisions by government officers or employees, including law enforcement personnel, have been held to be "discretionary," "judgmental," or so inextricably part of governmental policy making or "planning," that they "cannot be the subject of traditional tort liability," Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1020 (Fla. 1979), the language of section 768.28, Florida Statutes (1993) notwithstanding. A jury's passing on the wisdom of governmental policy may raise separation of power questions. Department of Transp. v. Neilson, 419 So.2d 1071, 1075 (Fla. 1982); Commercial Carrier Corp. The statutory waiver of sovereign immunity against tort liability which the State, its agencies, or its subdivisions otherwise enjoy extends to injurious governmental activity that is tactical or "operational," but not to basic governmental policy making into which a jury cannot properly intrude. Juries should not be permitted to usurp choices that the constitution entrusts to the legislative or executive branches.
To assist in distinguishing between what is operational and what is "the discretionary planning or judgment phase," our supreme court has adopted certain
criteria for determining the line of demarcation between discretionary and other executive or administrative processes, specifically: (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? 371 So.2d at 1019, quoting [Evangelical United Brethren Church of Adna v. State] 67 Wash.2d [246] at 255, 407 P.2d 440 at 445 [(1965)]. In applying this test to a particular set of circumstances, if all the questions can be answered in the affirmative, then the governmental conduct is discretionary and "nontortious." If one or more questions call for a negative answer, then further inquiry is necessary, depending upon the facts and circumstances involved. 67 Wash.2d at 255, 407 P.2d at 445.
Trianon, 468 So.2d at 918-19. In the present case, Officer McGrath's plan for capturing *712 the horse cannot fairly be viewed as an expression of "basic government policy."
Law enforcement officers must exercise discretion in enforcing laws and protecting the public safety.[3] For that reason, state and local government enjoys sovereign immunity for actions law enforcement personnel take or omit in performing "discretionary activities ... inherent in the act of governing." City of Jacksonville v. Mills, 544 So.2d 190 (Fla. 1989). Determining probable cause for arrest is an example. A plaintiff victimized by a person the authorities failed to arrest cannot recover damages from the public fisc on that account. Everton v. Willard, 468 So.2d 936 (Fla. 1985) (no recovery where driver who had been drinking was involved in fatal accident some fifteen minutes after sheriff's deputy stopped but did not arrest him). The decision when or whether to make an arrest is within the discretion of law enforcement officers in the executive branch, Rodriguez v. City of Cape Coral, 468 So.2d 963 (Fla. 1985); City of Daytona Beach v. Huhn, 468 So.2d 963 (Fla. 1985); Everton, subject, of course, to judicially enforceable rights against unlawful arrest.
The judiciary is not charged with seeing that the fire department employs the most efficacious firefighting techniques, or that policemen are deployed and police protection is provided in a particular, optimum fashion. A plaintiff in tort has no standing as a mere consumer of such governmental services. City of Daytona Beach v. Palmer, 469 So.2d 121 (Fla. 1985) (owner of property lost in fire cannot recover for firemen's negligent failure to extinguish blaze); Wong v. City of Miami, 237 So.2d 132 (Fla. 1970) (merchants cannot recover for damage rioters caused after police withdrew); Ellmer v. City of St. Petersburg, 378 So.2d 825 (Fla. 2d DCA 1979) (robbery victim cannot recover on theory police failed to warn of danger). Appellant cannot recover here on the theory that deputies should have been assigned to the area north of the City of Waldo or have been close enough by to reach the scene promptly. It was up to the sheriff's office to decide how to allocate limited resources. See Carter v. City of Stuart, 468 So.2d 955 (Fla. 1985). The dispatcher's inability to send help when requested reflects competing law enforcement needs. It was for the sheriff, not a jury, to assign priorities.
There are nevertheless "common law duties of care applicable to the same officials or employees in the operation of motor vehicles [see City of Pinellas Park v. Brown, supra] or the handling of firearms [or otherwise] during the course of their employment." Trianon, 468 So.2d at 920. "[T]he waiver of sovereign immunity now allows actions against all governmental entities for violations of those duties of care." Ibid. The courts are open to pedestrians run down by fire trucks, motorists rammed by police cars, and visitors to public buildings injured as a result of negligent maintenance. Evidence of facts giving rise to a duty of care was adduced in the present case. If injured in consequence, citizens are entitled to redress when "public employees `create a foreseeable peril, not readily discoverable by endangered persons, ... .' (Johnson v. State of California (1968) 69 Cal.2d 782, 786, 73 Cal. Rptr. 240, 447 P.2d 352...)." Walker v. County of Los Angeles, 192 Cal. App.3d 1393, 238 Cal. Rptr. 146, 149 (1987). See generally Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198 (5th Cir.1994) (discussing "state-created danger cases").
Officer McGrath's driving around in the dark with Mr. Murry riding on the hood was not, as a matter of law, "essential to the realization or accomplishment of [any governmental] policy, program, or objective." Trianon, 468 So.2d at 918. The jury should have been permitted to decide whether chasing the horse onto and along the highway created a danger that did not exist when the horse was grazing. In addition, turning all *713 the lights out deprived motorists of any notice of the danger, or so the jury should have been permitted to find. Accordingly, we reverse with directions for a new trial.
Reversed and remanded.
ALLEN and LAWRENCE, JJ., concur.
NOTES
[1] As sheriff of Alachua County, Lu Hindery argues that the directed verdict was proper as to him, even if judgment in favor of the City must be reversed. He cites Ramer v. State, 530 So.2d 915 (Fla. 1988) (municipal police officer's seizure of private property without sheriff's knowledge was unlawful, outside city limits); Holloway v. State, 342 So.2d 966 (Fla. 1977) (holding arrest  again apparently without sheriff's knowledge  by municipal police officer outside city limits unlawful); Treasure, Inc. v. State Beverage Dep't, 238 So.2d 580 (Fla. 1970) (holding suspension of a beverage license unlawful because the director of the beverage department had not been sworn in); and Stinson v. State, 76 Fla. 421, 80 So. 506 (1918) (holding arrest by deputy sheriff unlawful because his bond had not been approved).

These cases do not meet appellant's contention that Officer McGrath acted on behalf of the sheriff in going outside the city limits to assess the situation and then in taking action in unincorporated Alachua County. There is no question here about the lawfulness of an arrest. Whether Officer McGrath acted lawfully in trying to "seize" the horse or when he shot the animal after the accident is not germane to White's assertion that McGrath was acting on behalf of the sheriff's office at all pertinent times.
In addition to testimony about radioed exchanges with the dispatcher at the sheriff's office that night, evidence of a long-standing agreement between the sheriff's office and the City of Waldo was adduced to the effect that City police officers would act on the sheriff's behalf in that part of the county, when requested to do so. In exchange, according to the testimony, the sheriff's office provided the City dispatching services.
[2] "The question of foreseeability can be relevant both to the element of duty (the existence of which is a question of law) and the element of proximate causation (the existence of which is a question of fact)." McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla. 1992).
[3] "To better clarify the concept of governmental tort liability," the Trianon court found it "appropriate to place governmental functions and activities into the following four categories: (I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of the public safety; (III) capital improvements and property control operations; and (IV) providing professional, educational, and general services for the health and welfare of the citizens." Trianon Park Condominium v. City of Hialeah, 468 So.2d 912, 918-19 (Fla. 1985). The governmental activities at issue here fall in category II.