734 So.2d 508 (1999)
Henry H. RUSS, Jr., Appellant,
v.
CITY OF JACKSONVILLE, Appellee.
No. 98-1523.
District Court of Appeal of Florida, First District.
May 19, 1999.
*509 Lester Makofka, Jacksonville, for Appellant.
Richard A. Mullaney, General Counsel; Luis Tous, Assistant General Counsel, Office of General Counsel, Jacksonville, for Appellee.
VAN NORTWICK, J.
Henry R. Russ, Jr., appeals the final judgment in his false arrest action against appellee, the City of Jacksonville (the City). Because the trial court abused its discretion in excluding Russ's use of impeaching evidence relevant to the credibility and reliability of the arresting officer and central witness on behalf of the City, we reverse and remand for new trial.

Factual and Procedural Background
On October 24, 1995, at approximately 10:00 p.m., Russ was stopped by Officer Eugene R. Baker of the Sheriff's Office of the City of Jacksonville. After he administered field sobriety tests, Officer Baker arrested Russ for driving under the influence of alcohol (DUI). Russ was transported to the Duval County Jail, where a breathalyser test was administered twice, and on each test appellant's results were.000. Russ spent the night in jail. The next morning, the assistant state attorney offered to allow him to plead to reckless driving in exchange for dismissing the DUI charge. Russ pled no contest to reckless driving with adjudication withheld.
In July 1996, Russ filed suit against the City, alleging that he had been falsely arrested for DUI without probable cause. The case was initially set for trial during the week of August 25, 1997. On August 14, 1997, the City secured a protective order prohibiting any and all argument, testimony, evidence or comment at trial regarding Officer Baker's transfer from the DUI unit of the sheriff's office or the *510 introduction of any evidence regarding other DUI arrests made by Officer Baker.
The trial date was continued. The August 30, 1997 edition of The Florida Times-Union included an article stating that depositions taken in an unrelated DUI case revealed that Officer Baker and another officer had been removed from the DUI squads "because of questions about his credibility" and described criticism within the sheriff's office of the alleged "over zealous" practices of those officers in making DUI arrests. On September 17, 1997, Russ filed a motion for leave to file an amended complaint seeking to add a count for negligent retention of Officer Baker. In the motion to amend, Russ alleged that, when the City's motion for protective order was argued, he had no knowledge of any concerns about Officer Baker and, therefore, knew no basis to contest the City's motion. Russ's motion to amend was denied and trial was set for January 5, 1998, before a different judge.
The trial was, in effect, a swearing match between Russ and Officer Baker. According to Officer Baker, he made the traffic stop because Russ was driving erratically. Russ, who was driving home from a local tavern where he had met with a business associate, testified that he was driving normally. Officer Baker testified that, when Russ exited the car, he could smell alcohol on appellant's breath. Russ testified that he had only two sips of beer at the tavern. Officer Baker administered a series of field sobriety tests, which he felt Russ performed poorly. On the other hand, Russ testified that he thought he performed the tasks well and was very surprised when Officer Baker arrested him for DUI.
At trial, Officer Baker was presented as a trained law enforcement officer who followed the procedures of the sheriff's office. On cross-examination, Russ sought to impeach Officer Baker by questioning him with regard to the information in the August 30, 1997, newspaper article and an intradepartmental memorandum from the records of the sheriff's office.[1] The City objected, arguing that appellant was seeking to evade the restrictions of the protective order and to introduce the fact that Officer Baker was no longer in the DUI unit and had been criticized for stopping vehicles which did not show a suspicious driving pattern.
It is clear from the trial record that, in considering whether to allow the cross-examination, the trial judge believed he was bound by the predecessor judge's interlocutory ruling. After reviewing the cases upon which Russ was relying to support his impeachment of Officer Baker, the trial judge asked whether these were the same authorities cited to the predecessor judge and concluded that the predecessor judge's order had established the law of the case. The trial court explained:
The law that you cited seems to be very persuasive with respect to your position, however, I'm not prepared to go behind a ruling of a sitting judge, having heard full argument from both of you on this subject.
The jury returned a verdict in favor of the City, finding that Officer Baker had probable cause to arrest appellant.

Ruling of Predecessor Judge
It is apparent that the trial court was under the erroneous impression that it could not disturb the ruling of a predecessor judge on the interlocutory protective *511 order. Until final judgment, a successor judge does have the power to vacate or modify the interlocutory rulings or orders of any predecessor judge in the case. See Tingle v. Dade County Bd. of County Comm'rs, 245 So.2d 76, 78 (Fla.1971); State v. Glass, 657 So.2d 934, 935 n. 3 (Fla. 1st DCA 1995).
While it is true that a judge should hesitate to undo his own work, and hesitate still more to undo the work of another judge because of the "code" of restraint based upon comity and courtesy, nevertheless when presented with a prior interlocutory ruling that is based on a clearly mistaken interpretation of the law it is indeed appropriate for the succeeding judge to vacate or modify the prior order.
Keathley v. Larson, 348 So.2d 382, 384 (Fla. 2d DCA 1977)(footnote omitted).

Impeachment by Evidence of Officer's Prior Acts
Turning to the merits of appellant's arguments, the credibility, bias or prejudice of witnesses who testify in a case, as well as the weight to be given their testimony, are a matter for the consideration of and determination by the jury. Slavin v. Kay, 108 So.2d 462, 467-68 (Fla.1958). Where the credibility and bias of an officer is brought into question by virtue of that officer's past acts, impeaching evidence of the officer's past acts is admissible. Henry v. State, 688 So.2d 963, 965-66 (Fla. 1st DCA 1997), accord Landry v. State, 620 So.2d 1099, 1102 (Fla. 4th DCA 1993); see also Lutherman v. State, 348 So.2d 624, 625 (Fla. 3d DCA 1977). As the Second District Court of Appeal explained in Mendez v. State, 412 So.2d 965, 966 (Fla. 2d DCA 1982):
Whenever a witness takes the stand, he ipso facto places his credibility in issue. Cross-examination of such a witness in matters relevant to credibility ought to be given a wide scope in order to delve into a witness's story, to test a witness's perceptions and memory, and to impeach that witness.... The right of full cross-examination is absolute, and the denial of that right may easily constitute reversible error. (Citations omitted).
Thus, we conclude it was error to preclude the cross-examination of Officer Baker based upon information relating to his prior DUI arrest practices.[2]
We reject the City's arguments that the impeachment evidence relating to Officer Baker was impermissible general character evidence. The evidence sought to be introduced to impeach Officer Baker clearly does not relate to his general moral character, compare Chavers v. State, 380 So.2d 1180, 1181 (Fla. 5th DCA), but rather to his prior actions in making DUI arrests in circumstances virtually identical to the facts of the instant case which directly relate to his credibility as a witness in the instant case.
Because we are remanding for a new trial, it is unnecessary to address the remaining issues on appeal. Upon remand, Russ may amend his complaint to add a count seeking to state a cause of action for negligent retention. See Florida Rule of Civil Procedure 1.190(a). Such amended complaint will necessitate the filing of an amended answer, which will allow the City to cure any misunderstanding caused by the initial answer.
REVERSED and REMANDED for a new trial.
ALLEN AND WEBSTER, JJ., CONCUR.
NOTES
[1] The intradepartmental memorandum discussed the problems with Officer Baker's DUI arrests which led to his removal from the DUI squad "due to his lack of credibility in court." The memorandum stated in part that:

The [video] tapes showed no driving pattern, the defendants appearing to do well on the field sobriety tests, and [Officer Baker and another officer in the DUI squad] seemed to talk themselves into making arrests based on the defendants admitting to consuming alcohol.
The memorandum sets forth further concerns among judges and prosecutors about Officer Baker's credibility. Specifically:
Three judges said Baker and [another officer in the DUI unit] were overzealous, made bad cases, and that they had suppressed evidence on both officers['] cases.
[2] The error in denying admissibility of this evidence was compounded when in closing argument the City emphasized the arresting officer's credibility, as follows:

Not only were they trained officers on driving patterns, they were also trained on field sobriety reports. What reason would Officer Baker have to lie? Certainly if there was a reason, it wasn't brought out in the trial.