866 So.2d 713 (2004)
Richard A. STORM, Appellant,
v.
The TOWN OF PONCE INLET, Appellee.
No. 5D02-3555.
District Court of Appeal of Florida, Fifth District.
January 2, 2004.
Rehearing Denied March 2, 2004.
Robert L. McLeod II of McLeod, Canan, LLC, St. Augustine, for Appellant.
*714 Michael J. Roper and Ernest H. Kohlmyer, III, of Bell, Leeper & Roper, P.A., Orlando, for Appellee.
SHARP, W., J.
Storm appeals from an order which dismissed his complaint filed against the Town of Ponce Inlet for failure to state a cause of action based on sovereign immunity grounds. At the time the dismissal occurred, the Town was the only defendant left in the lawsuit. The original complaint also pled a cause of action against Gordis Preston, the chief building official for the Town, for supplying false information to Storm, either negligently or maliciously, concerning the proper building elevation upon which his residence needed to be built to comply with the Town's ordinances and the National Flood Insurance Program, his reasonable reliance on those misrepresentations, and the resulting damages to his property because, among other things, Storm was unable to obtain flood insurance. However, Storm dismissed Preston from the lawsuit with prejudice.
The count Storm pled against the Town based on the same facts, alleged that the Town had a common-law duty to supervise its chief officials, and that it had negligently retained Preston as its chief building official after knowing of his incompetence, misfeasance in office, and refusal to properly enforce compliance with the Town's building codes. This allegedly resulted in damage to Storm's property because of Preston's malfeasance in repeatedly misinforming Storm of the required building elevations, failure to enforce the Town's building codes, and Storm's reliance on Preston's express misrepresentations. Storm was a resident of the Town, subject to the Town's building code and regulations, obligated to obtain a building permit from the Town, through Preston, and he complied with Preston's directions and requirements to his detriment and damage. We affirm.
The standard for appellate review of a trial court's order dismissing a complaint for failure to state a cause of action is de novo.[1] The pleader is entitled to have the reviewing court accept as true all facts pled, and any inferences which may reasonably arise therefrom.[2] Only if, as a matter of law, the reviewing court determines no cause of action has been pled should it affirm.[3]
The Town relied on Trianon Park Condominium Assoc. v. City of Hialeah, 468 So.2d 912 (Fla.1985) as precedent for its position that sovereign immunity bars any remedy against the Town. The trial court agreed. Trianon decreed that there was no waiver of sovereign immunity for damages caused to individuals when building officials negligently enforced provisions of a municipal building code. The court held there could be no governmental tort liability to persons thereby because these functions fall within the first two categories of government operations (which Justice Overton defined in that case for the first time), which are immune from tort liability. Writing for a small majority, Justice Overton said:
The government clearly has no responsibility to protect personal property interests or ensure the quality of buildings that individuals erect or purchase. The *715 proper remedy for faulty construction lies in an action against the contractor, developer, or seller.
Trianon, 468 So.2d at 923. He also cautioned that the Trianon decision "addresses only the narrow issue of exercising basic discretionary judgment in the enforcement of the police power, public safety functions by a state, county or municipal governmental entity." Id.
Other cases decided since Trianon uniformly hold sovereign immunity bars tort liability on the part of the state or its agencies for state agents who negligently misinform members of the public about the issuance of a building permit,[4] provide an incorrectly labeled county utility map showing an existing water main where none existed,[5] and provide incorrect information regarding the requirements for federal flood insurance and negligently issue a building permit.[6] The rationale for these cases is that the government owes no duty to individual members of the public for giving out accurate information or properly enforcing building codes. As one writer commented: "A duty to all is a duty to no one."[7]
However, as Storm points out in his brief, Trianon does not address the same duty issue that is raised in this case: Can a municipality be held liable in tort for negligently hiring, supervising or retaining an employee-agent, after knowing of or being put on full notice of his or her incompetence, malfeasance, and likelihood of injuring individuals in the performance of his or her designated responsibilities? Nor is Trianon the last word by the Florida Supreme Court on the difficult and, to say the least, convoluted doctrine of sovereign immunity in Florida.[8]
Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989) is a more recent effort by the court to clarify how section 768.28, Florida's waiver of sovereign immunity statute,[9] should be interpreted in view of the somewhat disparate approaches of Trianon and Commercial Carrier Corp. v. Indian River *716 County, 371 So.2d 1010 (Fla.1979). In Kaisner, the court directed that the sovereign immunity analysis should begin with whether there is a common law or statutory duty of care that would have been applicable to an individual under similar circumstances. The court quoted from Williams v. State of California, 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137, 139 (1983), quoting another California case:
Conceptually, the question of the applicability of ... immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity.
543 So.2d at 734 (quoting Williams, 192 Cal.Rptr. 233, 664 P.2d at 139, quoting Davidson v. City of Westminster, 32 Cal.3d 197, 185 Cal.Rptr. 252, 649 P.2d 894, 896 (1982). After determining that a common law duty exists, then the court must consider whether the doctrine of governmental immunity bars the claim under principles stated in Commercial Carrier and Avallone v. Board of County Commissioners, 493 So.2d 1002, 1005 (Fla.1986).
Many decisions by courts after Kaisner have employed this two-step approach. See Henderson v. Bowden, 737 So.2d 532 (Fla.1999); Vann v. Dept. of Corrections, 662 So.2d 339 (Fla.1995); Austin v. Mylander, 717 So.2d 1073 (Fla. 5th DCA 1998), rev. denied, 729 So.2d 389 (Fla. 1999); Sams v. Oelrich, 717 So.2d 1044 (Fla. 1st DCA), rev. denied, 725 So.2d 1109 (Fla.1998); Garcia v. Reyes, 697 So.2d 549 (Fla. 4th DCA 1997); White v. City of Waldo, 659 So.2d 707 (Fla. 1st DCA 1995), rev. denied, 667 So.2d 774 (Fla.1996); State By and Through Office of State Attorney v. Kowalski, 617 So.2d 1099 (Fla. 5th DCA), rev. denied, 626 So.2d 1367 (Fla.1993); Farabee v. Rider, 995 F.Supp. 1398 (M.D.Fla.1998); Johnson v. Cannon, 947 F.Supp. 1567 (M.D.Fla.1996).
1. Existence of a Common Law Duty.
The negligent retention or supervision of an incompetent, dangerous agent or servant under circumstances which establish that the employer knew or should have known of the agent's or servant's incompetence and dangerousness, and the likelihood or foreseeability that such agent or servant would injure a third person, growing out of the employment status has long been recognized as a basis for tort liability in Florida. See Mallory v. O'Neil, 69 So.2d 313 (Fla.1954); Tallahassee Furniture Co., Inc. v. Harrison, 583 So.2d 744 (Fla. 1st DCA 1991), rev. denied, 595 So.2d 558 (Fla.1992). This common law duty is set forth in Restatement (Second) of Torts § 317[10] and Restatement (Second) of Agency 2d § 219(2) and § 213.[11]
*717 In Midwest Knitting Mills, Inc. v. United States, 950 F.2d 1295 (7th Cir.1991), the court said:
The tort of negligent supervision of employees enjoys a secure position in the mainstream of American common law.
950 F.2d at 1298. Only because the state involved in that case (Wisconsin) did not recognize that tort, where only economic damages were involved, did the court rule that a suit brought by a manufacturer against the Small Business Administration under the Federal Tort Claims Act should not proceed.
Florida courts have also recognized this tort in cases involving the state or one of its agencies, as a defendant. In Metropolitan Dade County v. Martino, 710 So.2d 20 (Fla. 3d DCA 1998) and Watson v. City of Hialeah, 552 So.2d 1146 (Fla. 3d DCA 1989), both decisions recognize that negligent retention or supervision of police officers or deputies is a viable tort which could be brought against the state or a municipality in a proper case.
In Martino, the court concluded that the evidence in the record was insufficient to establish negligence in hiring and supervision. And in Watson, the court ruled that the element of causation had not been proven. However, regarding this tort, it said that liability arises when an employer has a legal duty arising out of the relationship between the employment in question and the particular plaintiff, which is owed to the plaintiff if he or she is in the zone of foreseeable risks created by the employment. See also Russ v. Jacksonville, 734 So.2d 508 (Fla. 1st DCA 1999); Farabee v. Rider, 995 F.Supp. 1398 (M.D.Fla.1998); Johnson v. Cannon, 947 F.Supp. 1567 (M.D.Fla.1996).
This common law duty has been also recognized in the context of school boards and injury to students caused by school board employees. In School Board of Orange County v. Coffey, 524 So.2d 1052 (Fla. 5th DCA), rev. denied, 534 So.2d 401 (Fla.1988), this court said:
The retention and supervision of a teacher by a school board are not acts covered with sovereign immunity. The school board has a common law duty to protect others from the result of negligent hiring, supervision, or retention, which duty is identical to the duty upon private employers who hire, retain or supervise employees whose negligent or intentional acts in positions of employment can foreseeably cause injuries to third parties.
524 So.2d at 1053. See also Willis v. Dade County School Board, 411 So.2d 245 (Fla. 3d DCA), rev. denied, 418 So.2d 1278 (Fla. 1982).
Based on the allegations of the complaint in this case, it appears this common law tort has been sufficiently stated. Storm alleged the Town's employee, the chief building inspector, knowingly gave false information to Storm, that he systematically maladministered his department and caused injury to Storm and others who had to deal with him, and that the Town well knew of the damage the inspector was causing but allowed it to continue. Persons *718 like Storm who had to deal with the inspector, obtain permits from him, and build in compliance therewith, who were misled as to the required building elevations levels and suffered damage as a consequence, were within the "foreseeable zone of risk" of the inspector's alleged misfeasance, express false assurances, and incompetence. See McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992); Kaisner.
II. Sovereign Immunity Based on A Discretionary Act of the Government.
The second consideration for the court is whether or not the actions which give rise to the tort claim against the governmental body involve discretionary as opposed to operational matters. Kaisner. To define these terms, the Kaisner court refers its reader back to Avallone and Commercial Carrier. It also quotes from Johnson v. State, 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352, 360-361 (1968), which was adopted in Commercial Carrier:
[T]he very process of ascertaining whether an official determination rises to the level of insulation from judicial review requires sensitivity to the considerations that enter into it and an appreciation of the limitations on the court's ability to reexamine it.... It requires us to find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging careless conduct contributed to the governmental decision.
Kaisner, 543 So.2d at 736.
Commercial Carrier set forth a four-point test for when a challenged act or omission falls in the discretionary rather than the operational level: (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. Commercial Carrier.
These categories are a rough guide to what activities are or are not immune.[12] Because sovereign immunity cases are resolved on a case by case basis, it is sometimes difficult to harmonize the results, and many cases appear in conflict.[13] However, in this case the tortious act or omission alleged is the failure of the Town Council to supervise its chief building inspector, and not to have fired him after learning of his malfeasance and incompetence. The Town Council is comprised of elected townspeople, and constitutes its top executive and/or legislative body.
*719 The decision of the Town to hire, fire or retain a top executive appointee falls, without question, at the far end of the "discretionary" basic fundamental decisionmaking spectrum. It is the most upper level legislative or executive kind of decision.[14] As acknowledged by the Kaisner court, the discretionaryoperational level test is based on the concept of separation of powers. 543 So.2d at 737. Would intervention by a court in such an instance, inappropriately entangle the courts in fundamental questions of policy and planning?
The decision of the governmental executive (Mayor, Town Council, Governor) or the legislative branch, to hire or fire a top head of an agency is necessarily fundamental, and involves the exercise of governmental discretion at the highest level.[15] This is precisely the area into which, under the separation of powers doctrine, courts must not intervene. Only the voters, using the ballot box, are appropriate to second-guess the decisions of a Town Council at this level. As our sister court explained in White v. City of Waldo, 659 So.2d 707 (Fla. 1st DCA 1995), rev. denied, 667 So.2d 774 (Fla.1996):
Juries should not be permitted to usurp choices that the constitution entrusts to the legislative or executive branches.
659 So.2d at 711.
AFFIRMED.
SAWAYA, C.J., and PLEUS, J., concur.
NOTES
[1] Knox v. Adventist Health System/Sunbelt, Inc., 817 So.2d 961 (Fla. 5th DCA 2002).
[2] Harshbarger v. City of Colton, 197 Cal. App.3d 1335, 243 Cal.Rptr. 463 (4th Dist. 1988).
[3] Fox v. Professional Wrecker Operators of Florida, Inc., 801 So.2d 175 (Fla. 5th DCA 2001); Cintron v. Osmose Wood Preserving, Inc., 681 So.2d 859 (Fla. 5th DCA 1996).
[4] See Friedberg v. Town of Longboat Key, 504 So.2d 52 (Fla. 2d DCA 1987).
[5] See Hillsborough County v. Morris, 730 So.2d 367 (Fla. 2d DCA 1999).
[6] See City of Tarpon Springs v. Garrigan, 510 So.2d 1198 (Fla. 2d DCA 1987).
[7] Babcock v. Mason County Fire Dist. No. 6, 144 Wash.2d 774, 30 P.3d 1261, 1267 (2001).
[8] See Thomas A. Bustin and William N. Drake, Jr., Judicial Tort Reform: Transforming Florida's Waiver of Sovereign Immunity, 32 Stetson L.Rev. 469 (Spring 2003); Thomas D. Sawaya, Florida Personal Injury and Wrongful Death Actions § 9.6 (2003 ed).
[9] 768.28. Waiver of sovereign immunity in tort actions; recovery limits; limitation on attorney fees; statute of limitations; exclusions; indemnification; risk management programs

(1) In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.....
(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment....
[10] A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant
(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
(b) the master
(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.
[11] § 219(2). A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

(a) the master intended the conduct or the consequences, or
(b) the master was negligent or reckless, or
(c) the conduct violated a non-delegable duty of the master, or
(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.
§ 213. A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
(a) in giving improper or ambiguous orders of in failing to make proper regulations; or
(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:
(c) in the supervision of the activity; or
(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.
[12] William N. Drake, Jr. and Thomas A. Bustin, Governmental Tort Liability in Florida A Tangled Web, 77 Fla. Bar. J. 8 (Feb.2003).
[13] Id. at 10; Thomas D. Sawaya, Florida Personal Injury and Wrongful Death Actions § 9.6 (2003 ed).
[14] 18 Eugene McQuillin, The Law of Municipal Corporations § 53.04.10 (rev.3d ed.2003).
[15] See Schoonfield v. Mayor and City Council of Baltimore, 399 F.Supp. 1068, 1088 (D.Md. 1975), affirmed, 544 F.2d 515 (4th Cir.1976). But see Lockwood v. Village of Buchanan, 18 Misc.2d 862, 182 N.Y.S.2d 754 (Co.Ct.1959).