862 So.2d 890 (2003)
Susan P. GOODMAN, Appellant,
v.
J.K. HARTIGAN, and Jessica Hartigan, Appellees.
No. 5D03-1586.
District Court of Appeal of Florida, Fifth District.
December 19, 2003.
*891 Daniel H. Jones, Homosassa, for Appellant.
Robert B. Buchanan and M. Suzanne Green of Siboni, Hamer & Buchanan, P.A., Ocala, for Appellee.
MONACO, J.
Susan P. Goodman appeals the rendition of a summary final judgment in favor of J.K. Hartigan and Jessica Hartigan based on an asserted workers' compensation immunity. Because a factual issue remains concerning whether the actions of the Hartigans were within their managerial or policy making duties, we conclude that entry of a summary judgment was erroneous and reverse.
According to the complaint, Ms. Goodman was employed by Cashel Stud Farm, Inc. ("Cashel") as an "exercise rider" for thoroughbred horses. Cashel was in the business of boarding and training thoroughbred horses for the racing industry. The complaint alleges that the Hartigans, who physically live on the Cashel farm, held "managerial and policy making positions with Cashel," and the Hartigans agree with this assertion.
While Ms. Goodman was exercising a horse on a track located on Cashel's property, a dog owned personally by the Hartigans spooked the horse and Ms. Goodman was thrown to the ground. She was then stomped and kicked by the horse, receiving multiple debilitating injuries. Ms. Goodman further alleged that the Hartigans allowed the dog to roam unleashed, and that this "act of defendants was not within the managerial or policy making duties of defendants nor was it within their managerial or policy making capacities." Thus, according to Ms. Goodman, the dog had nothing to do with Cashel's business of boarding and training horses, and was no more than the Hartigan's personal pet.
Initially Ms. Goodman sought benefits under section 440, Florida Statutes, the workers' compensation law, and recovered a $100,000 settlement from her employer, Cashel. She thereafter filed suit against the Hartigans, seeking damages for their negligence. In their answer the Hartigans asserted that Ms. Goodman's exclusive remedy for the injuries she suffered was under the workers' compensation statute, and pointed out that Ms. Goodman had intentionally pursued and successfully obtained benefits under that act. Under such circumstances, they argue, Ms. Goodman is not entitled to pursue a further recovery under the negligence theory. See, e.g., Wheeled Coach Industries, Inc. v. Annulis, 852 So.2d 430 (Fla. 5th DCA 2003); Wishart v. Laidlaw Tree Service, Inc., 573 So.2d 183 (Fla. 2d DCA 1991). Ms. Goodman responds, on the other hand, that she is not seeking a further recovery against her employer, Cashel, but rather is seeking recovery for damages against the owners of the dog.
When the Hartigans moved for summary judgment, they submitted affidavits and testimony to the effect that they were both corporate officers of Cashel, and that they used the dog in the course of their employment duties to "acclimate the thoroughbred race horses ... to the presence *892 of other animals around the race track and to make them aware of various every day sights and sounds." They said, as well, that the use of the dog was a "managerial and policy-making decision of the Hartigans," and that they were, therefore, entitled to immunity under section 440.11(1), Florida Statutes (2001).
In opposition to the motion for summary judgment Ms. Goodman admitted that she pursued and accepted workers' compensation benefits from Cashel, but argued that she was not barred from proceeding against the Hartigans because the action against the Hartigans was for negligence committed by them acting in their private capacities in allowing the dog to roam the track while horses were being worked, and was not for negligence committed in the course and scope of their duties. She submitted several affidavits to rebut the argument that the dog was for desensitization of the horses. One affidavit was from a trainer at the Cashel track who indicated that he had worked there for several years and that there was never an instance when the dog was used in any way in training horses. He stated, in addition, that the dog was simply Mr. Hartigan's pet. Other affidavits related that the dog in question had caused at least two other accidents involving horses, one causing a rider to break both ankles, and that the Hartigans had been warned on a number of occasions of the danger in allowing their several dogs, including the one involved in this accident, to roam loose.
The trial court granted summary judgment, finding that the Hartigans had immunity because they were acting within the scope of their employment or duties.
The Court: Okay. You win. You lose. Prepare the judgment.
[Hartigans' Counsel]: Yes, sir. Thank you, Your Honor.
[Goodman's Counsel]: May I ask the Court's specific holdingthat your holding this was within the course
The Court: Within the scope of their employment, yes, sir.
[Goodman's Counsel]: You're saying that having the dog was within the course of scope?
The Court: Yes, sir.
[Goodman's Counsel]: Okay. I understand.
Apparently, the lower court decided as a matter of law that the actions of the dog owners in allowing the dog to roam unchecked at the racetrack was sufficient to qualify for immunity pursuant to section 440.11(1). Section 440.11(1) reads in pertinent part:
The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability, including vicarious liability, of such employer to any third-party tortfeasor and to the employee ... on account of such injury or death ...
The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, corporate officer or director, supervisor, or other person who in the course and scope of his or her duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of law, whether or not a violation was charged, for which the maximum penalty which may be imposed does not exceed 60 days' imprisonment ...
Summary judgement, of course, may only be awarded when the pleadings, affidavits, depositions and other appropriate documents within the court file reflect that there are no genuine issues of material *893 fact and that the movant is entitled to a judgment as a matter of law. See Florida Rules of Civil Procedure 1.540(c). Since it is conceded that the Hartigans are managers or policymakers, the issue to be determined is whether as a matter of law the actions of the Hartigans vis-a-vis their dog were entitled to the benefit of the workers' compensation immunity defense.
It is clear both from a plain reading of the statute and from the case law that workers' compensation immunity is extended to employees acting in a managerial or policy-making position only if the conduct causing the injury was within the scope of those managerial or policy-making duties. See Hawkins v. Cordy, 642 So.2d 1115, 1116 (Fla. 3d DCA 1994); cf., Eller v. Shova, 630 So.2d 537, 541 (Fla.1993). If there are issues of fact regarding whether the conduct was within the managerial or policy-making duties of the supervisory employee who caused the injury, a summary judgment is inappropriate. Cf., Madaffer v. Managed Logistics Systems, 601 So.2d 1328 (Fla. 2d DCA 1992).
Whether the actions of the Hartigans fell within their managerial or policy making duties is a material fact about which there is a genuine issue. Although the Hartigans have suggested that their handling of the dog fell within the protected range, there is sworn testimony in the record to the contrary. Under these circumstances a summary judgment is inappropriate.
REVERSED.
THOMPSON and PALMER, JJ., concur.