917 So.2d 993 (2005)
David M. WOODSON, Appellant,
v.
Shirley IVEY, Mother and Personal Representative, etc., Appellee.
No. 5D04-3326.
District Court of Appeal of Florida, Fifth District.
December 30, 2005.
*994 Gregory D. Jones, Collins Guyton and Kerry McGuinn, Jr., of Rywant, Alvarez, Jones, Russo & Guyton, P.A., Tampa, for Appellant.
John G. Crabtree, of John G. Crabtree, P.A., Key Biscayne; Edward L. Scott of Edward L. Scott, P.A., Ocala; and George R. Baise, Jr., of George R. Baise, Jr., P.A., Bradenton, for Appellee.
ORFINGER, J.
David M. Woodson appeals from a final judgment in favor of Shirley Ivey, Personal Representative of the Estate of Christopher G. Tenner, in a wrongful death action. On appeal, Woodson argues that the trial court erred by denying his motion for summary judgment and his motion to set aside the verdict and for entry of a judgment in accordance with his motion for directed verdict. For the reasons set forth hereafter, we reverse.
Christopher was tragically killed in a traffic accident involving the motorcycle he was driving and a truck. Christopher's mother, Shirley Ivey, filed a wrongful death suit on behalf of Christopher's estate against Woodson, the owner of the motorcycle. In that action, Ivey alleged that Woodson caused or contributed to Christopher's death by negligently allowing Christopher to operate the motorcycle, even though Christopher was unlicensed to operate a motorcycle and was unable to operate it safely. Woodson's primary defense was to assert worker's compensation immunity pursuant to section 440.11(1), Florida Statutes (2002).
Much of the evidence presented at trial was undisputed. Woodson is the owner/manager of Keepit-Safe Security Storage Systems, Ltd., a moving and storage company. Keepit-Safe employed twenty-four-year-old Christopher, as well as a half-dozen or so other employees, few of whom had commercial driving licenses that allowed them to drive large moving trucks. Helpers like Christopher accompany the drivers to load and unload the trucks. The employees are paid hourly for their work and for travel time between the company offices and moving job locations.[1]
On the day that Christopher died, Keepit-Safe had a job moving a customer that required four employees and two trucks, a larger truck owned by Keepit-Safe and a smaller truck rented from a truck rental franchise. Because one of the company's few drivers with a commercial driver's license had his license suspended for a DUI offense the previous day and was, therefore, *995 unable to drive one of the trucks as planned, another employee, Richard Zeller, was assigned to drive the rental truck, while Woodson drove the company truck. The two loaded trucks were to meet at the customer's home in the morning for unloading. Because Woodson did not want to remain at the job site while his employees spent most of the day unloading the trucks, he decided to bring his motorcycle along in the back of the company truck. He planned to ride the motorcycle back to Keepit-Safe's office while the trucks were being unloaded, and then ride back to the job site and reverse the procedure after the employees had finished their work.
Following that plan, Woodson drove one of the trucks to the job site with some of the employees, had his motorcycle unloaded from the truck, and rode back to the office. Woodson left instructions for the workers to call the office shortly before the job was completed so that he could ride back, load his motorcycle back into the truck, and drive the truck and the employees back to Keepit-Safe. In the mid-afternoon, Woodson received the call and rode his motorcycle back to the job site. After arriving, Woodson found that the rental truck had been unloaded, and was ready to be returned to the rental company. Woodson directed Zeller to return it. Though the Keepit-Safe truck was still being unloaded, Christopher apparently was not needed and Woodson told him to return to the Keepit-Safe office. Seemingly on a whim, Woodson suggested that Christopher ride the motorcycle back to the office and Christopher agreed, although somewhat reluctantly. On the way back to Keepit-Safe, Christopher drove the motorcycle into the path of an oncoming truck and was killed. Christopher did not have a motorcycle endorsement for his driver's license. Keepit-Safe had a copy of Christopher's license in his personnel file. The motorcycle, Woodson's personal vehicle, had never been previously been used to transport employees, although some employees had been permitted to ride it on Keepit-Safe property. Keepit-Safe did maintain worker's compensation insurance, as required by Florida law, which was in full force and effect on the day of the accident.
In her wrongful death action against Woodson, Ivey alleged that Woodson had a statutory duty pursuant to sections 322.03(4) and 322.12(5)(a), Florida Statutes (2002), to ensure that Christopher had a motorcycle endorsement prior to allowing him to operate his motorcycle, that Woodson was negligent in failing to do so, and that this failure resulted in, or contributed to, Christopher's death.[2] Woodson moved for entry of final summary judgment, contending that he was immune from civil liability to Ivey and the Estate pursuant to the worker's compensation immunity provisions of section 440.11(1), Florida Statutes (2002). The trial court denied Woodson's motion for final summary judgment and the case proceeded to trial. At the close of Ivey's case, Woodson made several motions for directed verdict, all of which were denied by the trial court. The jury determined that: (1) Christopher's death arose out of and in the course and scope of his employment; (2) Woodson was not acting within the course and scope of his managerial or policy-making duties with Keepit-Safe when he allowed Christopher to use his motorcycle; (3) there was negligence *996 on the part of Woodson that was a legal cause of Christopher's death; and (4) there was negligence on the part of Christopher that was a legal cause of his death.
Section 440.11(1), Florida Statutes (2002), establishing worker's compensation immunity, provides, in pertinent part:
(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability, including vicarious liability, of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, . . . and anyone otherwise entitled to recover damages from such employer at law . . . on account of such injury or death, . . .
. . . .
The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, corporate officer or director, supervisor, or other person who in the course and scope of his or her duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of a law, whether or not a violation was charged, for which the maximum penalty which may be imposed does not exceed 60 days' imprisonment as set forth in s. 775.082.
(Emphasis added). The statute and case law make clear that worker's compensation immunity is extended to an employer's owners, supervisors and managers when the conduct causing the injury is within the scope of such person's managerial or policy-making duties. Goodman v. Hartigan, 862 So.2d 890 (Fla. 5th DCA 2003). Conversely, corporate officers, supervisors and managers are not entitled to claim immunity when negligent acts causing injury to employees are committed outside the course and scope of their managerial or policy-making functions. Hawkins v. Cordy, 642 So.2d 1115, 1116 (Fla. 3d DCA 1994).
Under Florida's Worker's Compensation Act, an employer who secures worker's compensation coverage for his employees receives extensive immunity from suit by injured workers. Eller v. Shova, 630 So.2d 537, 540-41 (Fla.1993). Florida courts interpret the Act broadly to preserve immunity in the face of sometimes egregious acts by employers and managers, as long as those acts fall short of intentional torts, culpable negligence or serious criminal misconduct. See Byers v. Ritz, 890 So.2d 343, 347 (Fla. 3d DCA 2004); see also Mekamy Oaks, Inc. v. Snyder, 659 So.2d 1290, 1291 (Fla. 5th DCA 1995) (holding that employer retained worker's compensation immunity where supervisor removed safety switch from lawnmower, causing plaintiff to be thrown from mower and cut his foot); Emergency One, Inc. v. Keffer, 652 So.2d 1233, 1235 (Fla. 1st DCA 1995) (finding that employer retained worker's compensation immunity where supervisor refused to obtain plastic brushes because of expense, and this refusal led to employees being severely burned).
With the backdrop of expansive immunity for employers and managers as the public policy of Florida, we have no difficulty concluding that Woodson's decision to have Christopher return to Keepit-Safe on a motorcycle was a managerial decision, albeit, a very poor one. Ivey concedes that Woodson had the authority to direct Christopher to leave the job site and return to Keepit-Safe. Ivey further concedes that had Christopher been killed while returning to Keepit-Safe in a moving truck, Woodson would be entitled to worker's compensation immunity. The only *997 real dispute between the parties is whether Woodson's decision to allow Christopher to return on the motorcycle was outside the scope of Woodson's managerial duties. We think not, particularly given the broad immunity afforded employers and managers under the worker's compensation act. The decision to send Christopher back to the office was clearly managerial  the mode of transportation Woodson chose to accomplish that task was incidental to the business purpose served by Woodson's decision to send Christopher back to the office. In determining the immunity of managers and supervisors, the focus should be on the business purpose (or lack thereof) of the decision in question, not necessarily on the means utilized to accomplish that purpose.
On a more fundamental level, it seems to us that Ivey's complaint, though artfully drafted, really sets forth a claim of negligent entrustment of a motor vehicle against Woodson. Although an owner of a motor vehicle is liable for any losses negligently caused by the bailee of a motor vehicle to third parties, an owner is not liable for injuries sustained by the bailee to whom he entrusted the motor vehicle because of the bailee's negligent operation of it. Raydel, Ltd. v. Medcalfe, 178 So.2d 569 (Fla.1965); see Toombs v. Alamo Rent-A-Car, Inc., 833 So.2d 109 (Fla.2002) (applying Raydel). Though as a matter of common sense, Woodson should have made certain that Christopher was capable of safely operating a motorcycle before entrusting it to him, to view these facts differently would allow the negligent bailee of a motor vehicle to seek damages against the bailor, something prohibited by Raydel.[3]
For these reasons, we reverse this matter and remand with directions that final judgment be entered in favor of Woodson.
REVERSED AND REMANDED.
SHARP, W., and PETERSON, JJ., concur.
NOTES
[1] It was explained at trial that the usual practice was for helpers like Christopher to be driven to the job site in the moving truck, help the driver with the moving job, and then return to the office with the driver.
[2] Section 322.03(4), Florida Statutes (2002), provides that a person may not operate a motorcycle unless he or she holds a driver's license that authorizes such operation, subject to the appropriate restrictions and endorsements. Section 322.12(5)(a), Florida Statutes (2002), requires the Department of Highway Safety and Motor Vehicles to formulate a separate examination and licensure requirement for motorcycle operation.
[3] We are also unpersuaded, though do not decide, that the statutes Ivey relies on in her complaint, sections 322.03(4) and 322.12(5)(a), create civil liability on the part of anyone other than the operator of the motorcycle. Section 322.03(4) requires the operator of a motorcycle to be properly licensed. Section 322.12(5)(a) requires the Department of Highway Safety and Motor Vehicles to formulate a separate examination and licensure requirement for motorcycle operation. Neither of these statutes place any duty on someone in Woodson's position. Though not cited by the parties, we note that section 322.36, Florida Statutes (2002), provides:

No person shall authorize or knowingly permit a motor vehicle owned by him or her or under his or her dominion or control to be operated upon any highway or public street except by persons duly authorized to operate motor vehicles under the provisions of this chapter. Any person violating this provision is guilty of a misdemeanor of the second degree. . . .
We express no opinion as to whether a violation of this statute creates a private cause of action.