EMAS, J.
Pilar Pena, individually, as plenary guardian of the person and property of her husband, Alberto Zambrana, and as guardian of her children, Milena and Miledais Zambrana, (“Pena”) appeals from a final summary judgment entered in favor of Design-Build Interamerican, Inc. (“DBI”),
*1181 Manny Leon, Pedro Ramos, Sergio Ruiz (collectively, the “DBI Defendants”), Joel Gonzalez, Samuel Gonzalez, and Jose Cas-telnaux, a/k/a Jose Bonne (collectively, the “Royal Plumbing Defendants”). The trial court entered summary judgment in favor of these Defendants, finding there were no genuine issues of material fact, and that Defendants were entitled to worker’s compensation immunity under section 440.11(1), Florida Statutes (2008). We reverse, holding that a genuine issue of material fact remains in dispute whether, at the time of the accident and for purposes of worker’s compensation immunity, Zam-brana was employed by Royal Plumbing Corporation or One Stop Plumbing Supply, Inc.

BACKGROUND

A.The Parties

In April 2008, DBI served as the general contractor and construction manager on a construction project at a leased processing plant in Miami. Manny Leon was the president of DBI; Pedro Ramos was its vice-president; and Sergio Ruiz was an employee of DBI. Royal Plumbing Corporation (“Royal Plumbing”) was the plumbing subcontractor, and One Stop Plumbing Supply, Inc. (“One Stop Plumbing”) supplied plumbing parts to Royal Plumbing. Joel Gonzalez was the president of both Royal Plumbing and One Stop Plumbing, and the two companies operated out of a single location. Samuel Gonzalez and Jose Castelnaux a/k/a Jose Bonne (“Bonne”) were employees of Royal Plumbing. Alberto Zambrana worked as a plumbing supply deliveryman for either Royal Plumbing or One Stop Plumbing (or both).
B. The Facts and the Injury
On April 4, 2008, Zambrana, while in the course and scope of his employment, delivered a steel pipe to the construction site. Once at the site, he was told by Alberto Bogantes, a Royal Plumbing employee, to take the steel pipe to an upper level location. Zambrana helped carry the pipe up to the second level, and held the pipe in place while it was installed.[1] As he was walking toward the lift to return to the lower level, Zambrana stepped on a false ceiling and fell from the upper level some twenty feet to the ground below. Zambra-na was seriously injured, leaving him in a persistent vegetative state. His wife, Pena, was appointed plenary guardian of Zambrana, and filed a lawsuit on his behalf against the DBI Defendants and the Royal Plumbing Defendants[2] for negligence and for loss of consortium on behalf of herself and Zambrana’s two children.
C. Procedural History
Prior to filing the lawsuit, Pena received worker’s compensation benefits for her husband’s injuries from State Farm Florida Insurance Company, the worker’s compensation insurer for both Royal Plumbing and One Stop Plumbing. In their answers to the amended complaint, all of the Defendants asserted worker’s compensation immunity as an affirmative defense, and they later filed motions for summary judgment on this basis.
The issue presented at the motion for summary judgment was whether Zambra-na was an employee of Royal Plumbing or One Stop Plumbing. Pena asserted there *1182 remained genuine issues of disputed fact regarding whether Zambrana was employed by Royal Plumbing or by One Stop Plumbing, precluding summary judgment on the basis of worker’s compensation immunity, and further, that exceptions existed to any claim of worker’s compensation immunity. The trial court concluded there were no genuine issues of material fact, and found that Zambrana was a Royal Plumbing employee. The trial court entered final summary judgment in favor of the DBI Defendants and the Royal Plumbing Defendants. This appeal followed.

ANALYSIS

This court reviews orders granting summary judgment de novo. Sierra v. Shevin, 767 So.2d 524 (Fla. 3d DCA 2000). In doing so, we must review the record in a light most favorable to the non-moving party. Delandro v. America’s Mortg. Servicing, Inc., 674 So.2d 184 (Fla. 3d DCA 1996). Importantly, “[i]f the evidence raises any issue of material fact, ... is conflicting, [or] permit[s] different reasonable inferences, ... it should be submitted to the jury as a question of fact.” Moore v. Morris, 475 So.2d 666, 668 (Fla.1985).
There is no dispute that Zambrana was provided worker’s compensation benefits in this case. However, Pena contends the evidence is conflicting as to whether Zam-brana was employed by Royal Plumbing or One Stop Plumbing at the time of the accident, and thus, the jury must decide that issue before the court can determine whether Appellees are entitled to worker’s compensation immunity as a matter of law. After reviewing the record in the light most favorable to Pena, we agree.
A. Worker’s compensation immunity in Florida
Pursuant to Chapter 440, Florida Statutes, employers in Florida are required to provide worker’s compensation coverage for their employees. Deen v. Quantum Res., Inc., 750 So.2d 616 (Fla.1999). The Worker’s Compensation Law was enacted to “assure the quick and efficient delivery of disability and medical benefits to an injured worker.” § 440.015, Fla. Stat. (2008). Of significance, the Legislature has expressed the following legislative intent:
[T]he worker’s compensation system in Florida is based on a mutual renunciation of common-law rights and defenses by employers and employees alike.
[Disputes concerning the facts in workers’ compensation cases are not to be given a broad liberal construction in favor of the employee on the one hand or the employer on the other hand, and the laws pertaining to worker’s compensation are to be construed in accordance with the basic principles of statutory construction and not liberally in favor of either employee or employer.

Id.

In construing the statutory worker’s compensation scheme, the Florida Supreme Court has observed:
“As a quid pro quo for requiring employers’ liability for payment of workers’ compensation benefits, the statute provides to such employers an immunity from tort lawsuits by employees” under certain circumstances. Deen, 750 So.2d at 618. This system “provides employees limited medical and wage loss benefits, without regard to fault, for losses resulting from workplace injuries in exchange for the employee relinquishing his or her right to seek certain common law remedies from the employer for those injuries under certain circumstances.” Jones v. Martin Elecs., Inc., 932 So.2d 1100 (Fla.2006). “It is the obligation to secure workers’ com *1183 pensation that gives the employer immunity from suit as a third-party tortfeasor.” Cuero v. Ryland, Grp. Inc., 849 So.2d 326, 328 (Fla. 2d DCA 2003) (citing Jones v. Fla. Power Corp., 72 So.2d 285, 287 (Fla.1954)).
Section 440.10(l)(a), Florida Statutes (2008) provides:
Every employer coming within the provisions of this chapter shall be liable for, and shall secure, the payment to his or her employees ... of the compensation payable under ss. 440.13, 440.15, and 440.16. Any contractor or subcontractor who engages in any public or private construction in the state shall secure and maintain compensation for his or her employees under this chapter as provided in s. 440.38.
Section 440.10(l)(b) provides further:
In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engage on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
See also, Adams Homes of NW Fla. v. Cranfill, 7 So.3d 611, 613 (Fla. 5th DCA 2009) (noting statutory employer who ensures that subcontractor secures worker’s compensation coverage is immune from suit for the employees’ personal injuries.)
Accordingly, because Royal Plumbing was DBI’s subcontractor, if Zambrana was employed by Royal Plumbing (rather than One Stop Plumbing), DBI would be considered Zambrana’s statutory employer and would also be entitled to worker’s compensation immunity.
Under section 440.11(1), Florida Statutes (2008):
The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability, including vicarious liability, of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except as follows:
(a) If an employer fails to secure payment of compensation as required by this chapter....
(b) When an employer commits an intentional tort that causes the injury or death of the employee. For purposes of this paragraph, an employer’s actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that:
1. The employer deliberately intended to injure the employee; or
2. The employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.
The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer *1184 when such employee is acting in furtherance of the employer’s business and the injured employee is entitled to receive benefits under this chapter. Such fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death.
The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, corporate officer or director, supervisor, or other person who in the course and scope of his or her duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of a law, for which the maximum penalty which may be imposed does not exceed 60 days’ imprisonment as set forth in s. 775.082.
Thus, under Florida law, not only would Zambrana’s employer (and any statutory employer) be entitled to immunity, so too would his fellow employees and the employees of Zambrana’s statutory employer. Fla. Dep’t of Transp. v. Juliano, 864 So.2d 11 (Fla. 3d DCA 2003). If Royal Plumbing was Zambrana’s employer, all of the DBI Defendants and Royal Plumbing Defendants would be entitled to immunity, absent the application of any statutory exception. If however, Zambrana was employed by One Stop Plumbing, a supply company and not a subcontractor, none of the Ap-pellees would be entitled to immunity.[3]
The trial court concluded that there were no genuine issues of material fact, and that Zambrana was a Royal Plumbing employee. Pena contends the trial court erred because genuine issues of material fact remain in dispute on this question.
B. Evidence that Royal Plumbing was Zambrana’s Employer
The following summarizes the evidence offered by Appellees to establish that Royal Plumbing was Zambrana’s employer:
- Zambrana’s employee file included: an employment application on Royal Plumbing letterhead; W-2 forms for 2006-2008 listing Royal Plumbing as Zambrana’s employer; a new hire reporting form for the State of Florida from Royal Plumbing referencing Zambrana’s hiring; weekly pay stubs from Royal Plumbing to Zambrana dated August 10, 2006 through April 9, 2008;
- Pena (Zambrana’s wife) testified at her deposition that Royal Plumbing employed her husband;
- The petition for worker’s compensation benefits signed by Pena listed Royal Plumbing as Zambrana’s employer;
- Pena named Royal Plumbing as Zam-brana’s employer in her answers to interrogatories served in this case;
- Yairis Gonzalez, the individual identified by Royal Plumbing as the person with most knowledge as to Zambra-na’s employment, testified in her deposition that Royal Plumbing was Zambrana’s employer on the date of the accident and for a couple of years prior. She also testified that Zambra-na delivered supplies for Royal *1185 Plumbing to its job sites and that One Stop Plumbing had its own separate driver for delivering supplies to other plumbers not employed by Royal Plumbing;
- Joel Gonzalez, President of both Royal Plumbing and One Stop Plumbing, averred in an affidavit that Zambrana was employed only by Royal Plumbing, and never by One Stop Plumbing.
C. Evidence that One Stop Plumbing was Zambrana’s Employer
The following summarizes the evidence offered by Pena to establish that One Stop Plumbing was Zambrana’s employer:
- Joel Gonzalez, the President of both Royal Plumbing and of One Stop Plumbing, testified in his deposition that Zambrana was employed by One Stop Plumbing;[4]
- Nancy Hall, a representative from State Farm, the worker’s compensation insurance carrier, testified that based on auditor’s reports (prepared by an outside auditor) Zambrana was designated an employee of One Stop Plumbing;[5]
- Bonne, an employee of Royal Plumbing, testified at his deposition that Zambrana made plumbing supply deliveries to job sites in a company truck with the Royal Plumbing logo and that Royal Plumbing and One Stop Plumbing were the “same thing;”
- Bogantes, another Royal Plumbing employee, testified that Zambrana was a “co-worker” hired as a driver to deliver plumbing materials, and that sometimes the delivery vehicle was a Royal Plumbing car or sometimes “it could have been One Stop Plumbing.”
Although there is certainly substantial evidence that Zambrana was a Royal Plumbing employee, we hold that, under our standard of review, and the standard to be applied by the trial court on a motion for summary judgment,[6] a genuine issue of material fact remains in dispute and summary judgment was improperly granted.
D. Joel Gonzalez
As discussed above, because Joel Gonzalez is the president of both Royal Plumbing and One Stop Plumbing, and it is undisputed that Zambrana was employed by at least one of these entities, Joel Gonzalez would be entitled to immunity under either scenario unless one of the few exceptions, provided in section 440.11, applies. Those exceptions include where the employer, supervisor or manager “engages in an intentional act designed to *1186 cause, or substantially certain to cause, injury or death to an employee;” or where the employer/supervisor/manager is culpably or criminally negligent. Byers v. Ritz, 890 So.2d 343, 346-47 (Fla. 3d DCA 2004). See also, § 440.11(1), Fla. Stat. (2008). Florida courts have construed these statutory exceptions to apply “only if the conduct causing the injury was within the scope of [the employer’s supervisors, or manager’s] managerial or policy-making duties.” Goodman v. Hartigan, 862 So.2d 890, 893 (Fla. 5th DCA 2003). See also, Woodson v. Ivey, 917 So.2d 993 (Fla. 5th DCA 2005); Emergency One, Inc. v. Keffer, 652 So.2d 1233 (Fla. 1st DCA 1995). “In determining the immunity of managers and supervisors, the focus should be on the business purpose (or absence thereof) of the decision in question, not necessarily on the means utilized to accomplish that purpose.” Woodson, 917 So.2d at 993 (finding that although an owner’s decision to direct his unlicensed employee to drive a motorcycle from a job-site back to the office was a poor one, it was nonetheless a managerial decision for which he was immune from suit). Pena asserts that Joel Gonzalez’s decision to go on vacation instead of being present to supervise the job site did not constitute a managerial or policymaking function, and thus he was not entitled to-immunity. We disagree. Rather, we hold that the owner’s decision to leave other managerial staff in charge while he is himself unavailable serves a “business purpose,” and therefore, Joel Gonzalez’s actions in doing so do not exempt him from the immunity he was otherwise entitled to under section 440.11(1).
We therefore reverse the final summary judgment as to all defendants except for Joel Gonzalez and remand for proceedings consistent with this opinion.

. The pipe was approximately twenty-one feet long by three inches in diameter and weighed 300-400 pounds.

. Royal Plumbing was originally named as a defendant, but Pena voluntarily dismissed the company prior tb entry of the final summary judgment. The Architects Group, Inc., which was also named as (and remains) a defendant below, is not involved in this appeal.

. The exception to this would be Joel Gonzalez, President of both One Stop Plumbing and Royal Plumbing. As an officer of both companies, he would be entitled to immunity under section 440.11(1) (absent any statutory exception to immunity), regardless of whether Zambrana was employed by One Stop Plumbing or Royal Plumbing.

. Two months after his deposition was taken, Joel Gonzalez changed this testimony in an errata sheet prepared two months after his deposition, in which he stated that Zambrana was employed by Royal Plumbing, not One Stop Plumbing. Of course, both the deposition testimony and the errata sheet itself constitute admissible evidence. Motel 6, Inc. v. Dowling, 595 So.2d 260 (Fla. 1st DCA 1992).

. Hall did testify, however, that if Royal Plumbing’s employee records showed that Zambrana was employed by Royal Plumbing, she would have no ability to dispute that fact.

. When a defendant moves for summary judgment, it is not for the trial court to determine whether the plaintiff can prove her case, but only whether the record evidence establishes conclusively that the plaintiff cannot prove her case. If the record evidence raises even the slightest doubt, summary judgment is not appropriate. Williams v. Fla. Realty & Mgmt. Co., 272 So.2d 176 (Fla. 3d DCA 1973). Stated another way, the function of the trial court on a motion for summary judgment is to determine whether there exist any genuine issues of material fact, not to adjudicate those genuine issues of material fact. Trs. Of Internal Improvement Fund of Fla. v. Sutton, 206 So.2d 272 (Fla. 3d DCA 1968).