580 So.2d 869 (1991)
Patricia DOSDOURIAN, Appellant,
v.
Richard Paul CARSTEN and Christine DeMario, Appellees.
No. 90-1063.
District Court of Appeal of Florida, Fourth District.
May 29, 1991.
Rehearing and Rehearing Denied July 2, 1991.
R. Fred Lewis of Magill & Lewis, P.A., Miami, for appellant.
Barbara J. Compiani and Larry Klein of Klein & Walsh, P.A., and Louis M. Silber of Pariente & Silber, West Palm Beach, for appellees.
Rehearing and Rehearing En Banc Denied July 2, 1991.
ANSTEAD, Judge.
Appellant, Patricia Dosdourian, challenges a final judgment apportioning fault among the parties and awarding damages to the appellee, Richard Paul Carsten. She claims that a settlement agreement between appellees Christine DeMario and Carsten should have been disclosed to the jury. We affirm but certify a question of great public importance.
Carsten brought suit against Dosdourian and DeMario, alleging that both operated their cars in a negligent fashion causing his injuries. Shortly before trial began, Carsten moved in limine to exclude from disclosure to the jury an agreement reached between he and DeMario pursuant to which *870 Carsten settled all claims against DeMario in return for payment of her insurance policy limits of $100,000 and an agreement that DeMario would remain in the litigation through trial and judgment. The trial judge granted Carsten's motion, classifying the agreement as a release, and ruling that it would not be disclosed to the jury unless DeMario put into question her credibility and interest in the litigation by testifying. The trial judge also denied Carsten's motion to dismiss DeMario from the proceedings.
At the conclusion of the trial, the trial judge instructed the jury that there were two pending claims, each requiring separate consideration: one against Dosdourian and one against DeMario. The jury charged Dosdourian with 35% negligence, DeMario with 55% and Carsten with 10%. It found medical damages and hospital costs amounted to $193,206.27; lost earnings were set at $21,369; future medical costs were deemed to be $22,240 and future lost wages totalled $383,631.50. For pain and suffering, the jury awarded Carsten $80,000 (past) and $1,300,000 (future). The court subsequently entered final judgment ordering Dosdourian to pay 35% of Carsten's non-economic damages.[1]

THE SETTLEMENT AGREEMENT
Appellant argues that the agreement between Carsten and DeMario is an agreement of the kind involved in Booth v. Mary Carter Paint Company, 202 So.2d 8 (Fla.2d DCA 1967), which should have been disclosed to the jury. She claims that the exclusion of the agreement, and the fact that DeMario remained in the lawsuit as a party, amounted to deception and resulted in injustice. Appellees characterize the agreement as a release which is statutorily excluded from jury consideration.
In Frier's, Inc. v. Seaboard Coastline Railroad Co., 355 So.2d 208 (Fla. 1st DCA), cert. dism'd, 360 So.2d 1250 (Fla. 1978), the court explained that the loosely-grouped category of agreements encompassed by the term "Mary Carter" are generally
entered into between a plaintiff and one or more but not all defendants which typically ha[ve] the following features:
(A) secrecy;
(B) the agreeing defendants remain as party defendants in the lawsuit;
(C) the agreeing defendants' liability is decreased in direct proportion to the non-agreeing defendants increase in liability;
(D) the agreeing defendant guarantees to the plaintiff a certain amount of money if plaintiff does not receive a judgment against any of the defendants or if the judgment is less than a specified sum.
Id. at 210. See generally Booth v. Mary Carter Paint Co., 202 So.2d 8 (Fla.2d DCA 1967). This court pointed out in Charles McArthur Dairies, Inc. v. Morgan, 449 So.2d 998, 1000 (Fla.4th DCA 1984), that "Mary Carter" agreements presuppose settlement is dependent upon a proportional reduction in the agreeing defendant's liability to the increase in the non-agreeing defendant's as determined at trial.
In Ward v. Ochoa, 284 So.2d 385 (Fla. 1973), the court held that the search for truth requires the disclosure of "Mary Carter" agreements:
The search for the truth, in order to give justice to the litigants, is the primary duty of the courts. Secret agreements between plaintiffs and one or more of several multiple defendants can tend to mislead judges and juries, and border on collusion. To prevent such deception, we are compelled to hold that such agreements must be produced for examination before trial, when sought to be discovered under appropriate rules of procedure. If the agreement shows that the signing defendant will have his maximum liability reduced by increasing the liability of one or more co-defendants, such agreement should be admitted into evidence at trial upon the request of any *871 other defendant who may stand to lose as a result of such agreement. If defendants not directly affected by such agreement move for severance because of possible prejudice to them, the Court shall exercise its sound discretion in granting or denying such motion.
Id. at 387-88. (Emphasis added). Similarly, the third district held in Imperial Elevator Co., Inc. v. Cohen, 311 So.2d 732 (Fla.3d DCA 1975), cert. denied, 327 So.2d 32 (Fla. 1976), that a jury was entitled to know of a "Mary Carter" agreement since it relates to the credibility and demeanor of witnesses and their interest in the outcome of the case, as well as the conduct of counsel during the course of trial. These, as well as numerous other cases, stand for the undeniable proposition that "Mary Carter" agreements not only are admissible, but should be admitted into evidence to avoid misleading the jury.
However, appellee points out that the agreements in the cited cases share a factor absent from the instant agreement. In the earlier "Mary Carter" cases, defendants remained active in the litigation in order to diminish their own liability in proportion to another defendant's. See, e.g., Warn Industries v. Geist, 343 So.2d 44, 47 n. 1 (Fla.3d DCA), cert. denied, 353 So.2d 680 (Fla. 1977) (key to "Mary Carter" agreement is plaintiff's recovery of a minimum sum from agreeing defendant, but recovery is premised on contingencies such as minimum or maximum verdict); Quinn v. Millard, 358 So.2d 1378 (Fla.3d DCA 1978); Imperial Elevator, 311 So.2d at 733 (codefendants agreed that to pay $50,000, if verdict not in excess of $125,000; if in excess of $125,000, defendants would not contribute). The question then becomes whether the Carsten-DeMario agreement should be classified as a "Mary Carter" agreement given the admitted lack of any term reducing DeMario's liability in proportion to Dosdourian's.
In the instant case, DeMario agreed to settle with Carsten for the $100,000 liability limitation of her insurance policy. The settlement in this case was also conditioned upon DeMario's continued participation in the lawsuit. Florida Statutes section 768.041(3) generally provides that releases are not admissible into evidence. However, this statute seems to contemplate the usual situation where a claim is settled, a party released, and no further judicial proceedings against that party are contemplated. Dosdourian claims that if the instant agreement is a simple release, the trial judge should have dismissed DeMario pursuant to Morgan. 449 So.2d at 1000. Carsten counters by arguing that DeMario's presence was required pursuant to Whited v. Barley, 506 So.2d 445, 447 (Fla.1st DCA), rev. denied, 515 So.2d 230 (Fla. 1987), where the first district recognized Morgan, but held without elaboration that the trial court improperly dismissed the agreeing defendant from the lawsuit because the release failed to resolve the issue of that defendant's proportionate share of negligence. We disagree with Whited.
In 1986, after Morgan, the Legislature adopted section 768.81, Florida Statutes, which provides in pertinent part:
(3) Apportionment of damages.  In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of joint and several liability.
The appellee claims that since both economic and non-economic damages depend upon relative percentages of fault, it was necessary to have DeMario in the lawsuit. We again disagree. As the appellant notes, there will be numerous instances, such as those involving pre-suit settlements or tort-feasors immunized under workers compensation or other legal immunities, where other tort-feasors will not be parties to the litigation. We do not believe this statute requires the joinder of settling parties under circumstances similar to those involved herein.

PREJUDICE
We find it difficult to identify actual prejudice resulting from the nondisclosure *872 of the agreement or the continued participation of DeMario in the action. The appellee claims there is none because the settling defendant, having limited her liability already, did not have the same motivation as the settling defendant did in Mary Carter. The appellant, on the other hand, cites numerous instances at trial in which she claims DeMario's counsel openly supported the case for the plaintiff and against appellant. We are unable to conclude with any certainty that such was the case. Indeed, under ordinary circumstances such conduct would not be subject to question. However, it is because it is difficult to demonstrate prejudice to a non-settling defendant that "Mary Carter" agreements are required to be disclosed to the jury. Under our adversary system a jury can usually assume that the parties and their counsel are motivated by the obvious interests each has in the litigation. That assumption is no longer valid when the parties have actually made an agreement to the contrary prior to trial. The fairness of the system is undermined when the alignment of interests in the litigation is not what it appears to be.
Jurors are also deceived by being informed that they are resolving an existing dispute between parties that have already resolved their differences. In our view, this undermines the integrity of the jury system which exists to fairly resolve actual disputes between our citizens. Hence, even if the parties and counsel conduct themselves with honesty and integrity, a cloud of doubt remains over the proceedings because of the information withheld from the jurors.

CONCLUSION
We believe the same policy reasons requiring disclosure of secret settlement agreements in the "Mary Carter" line of cases apply here even though the motivations of the settling parties are not as clear. The integrity of our justice system is placed in question when a jury charged to determine the liability and damages of the parties is deprived of the knowledge that there is, in fact, no actual dispute between two out of three of the parties. However, under Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), we are bound to follow the holdings of the Florida Supreme Court on this issue. In our view, the holding in Ward v. Ochoa specifically contemplates a contingent-type agreement prospectively reducing the liability of the settling defendant depending on the outcome at trial, before requiring disclosure of the agreement to the jury. We have previously quoted with emphasis a portion of the Ward opinion to that effect. See Ward, 284 So.2d at 387.
Based upon our interpretation of Ward, we affirm. However, because of our concerns, and in order to give the appellant an opportunity to have this issue reviewed by the supreme court, we certify the following as a question of great public importance:
IS A NON-SETTLING DEFENDANT ENTITLED TO HAVE THE JURY INFORMED OF A SETTLEMENT AGREEMENT BETWEEN THE PLAINTIFF AND ANOTHER DEFENDANT WHEREBY THE SETTLING DEFENDANT'S OBLIGATION IS FIXED BUT THE SETTLING DEFENDANT IS REQUIRED TO CONTINUE IN THE LAW SUIT?
STONE and WARNER, JJ., concur.
NOTES
[1] Appellant also complains about the trial court's failure to order a set off for the $100,000.00 settlement. However, appellant concedes that no request was made to the trial court to do so. We find no error by the trial court in not acting on its own to grant a set off. Our finding is without prejudice to the appellant to seek a set off in the trial court upon remand.