965 So.2d 211 (2007)
Albert SALEEBY, Appellant,
v.
ROCKY ELSON CONSTRUCTION, INC., Appellee.
Nos. 4D06-1535, 4D06-4349, 4D07-5.
District Court of Appeal of Florida, Fourth District.
September 5, 2007.
Rehearing Denied October 25, 2007.
*212 Diran V. Seropian of Edna L. Caruso, P.A., West Palm Beach, Edward Rubinoff and Andrew M. Moss of Kutner, Rubinoff & Moss, P.A., Miami, for appellant.
Kimberly A. Ashby of Akerman Senterfitt, Orlando, for appellee.
GROSS, J.
Albert Saleeby appeals from an adverse final judgment precluding him, under the Workers' Compensation Act, from recovering in tort against Rocky Elson Construction Company for injuries he sustained while working on a construction site. For the following reasons, we affirm.
Saleeby was employed by Labor for Hire, a help services supply company,[1] to perform manual labor for various companies. Typically, Saleeby would report to Labor for Hire; if work was available, he would be given a work order indicating the company to which he was assigned and the supervisor to whom he should report. Once at the jobsite, Saleeby typically was instructed, supervised and controlled by the hiring company. Labor for Hire retained the exclusive right to fire Saleeby and was responsible for paying him at the end of each work day. Labor for Hire would then bill its customers, charging them for the hours worked by each Labor for Hire employee, plus amounts designed to cover Labor for Hire's overhead, including the cost of workers' compensation insurance.
In December 1999, Rocky Elson requested temporary workers. Labor for Hire sent Saleeby and another laborer to a construction site. Once at the jobsite, Rocky Elson's supervisor directed Saleeby to assist in erecting trusses. Saleeby's duties included hooking trusses to a crane and holding taglines to prevent the trusses from swinging while in transit. After completing the day's work, Saleeby and the rest of the construction crew were standing underneath the installed trusses when they collapsed and injured Saleeby.
After collecting workers' compensation benefits from Labor for Hire, Saleeby filed a negligence complaint against Rocky Elson. Rocky Elson raised the defense of workers' compensation immunity. At trial, Rocky Elson moved for a directed verdict based upon that immunity. The trial court granted the motion in part, finding Saleeby to be a borrowed servant under section 440.11(2), Florida Statutes (2000) but denied a directed verdict on the issue of whether Rocky Elson's conduct fell within the intentional tort exception to workers' compensation immunity. At the conclusion of trial, the jury found Rocky Elson was covered by worker's compensation immunity.
On appeal, Saleeby argues that the trial court erred in directing a verdict on the borrowed servant issue. We disagree.
Pursuant to section 440.11(1), Florida Statutes (2000), the liability of an employer under the workers' compensation law "shall be exclusive and in place of all *213 other liability." The employer's immunity "is a quid pro quo; the employee forgoes the right to sue in exchange for the employer's assumption of liability without fault." Fitzgerald v. S. Broward Hosp. Dist., 840 So.2d 460 (Fla. 4th DCA 2003).
Florida law extends "workers' compensation immunity to an employer who uses the employees of a `help supply services company.'" Tu-Lane Invs., Inc. v. Orr, 889 So.2d 961 (Fla. 1st DCA 2004); see § 440.11, Fla. Stat. (2000).[2] "An employee so engaged by the employer shall be considered a borrowed employee of the employer, and, for the purposes of this section, shall be treated as any other employee of the employer." § 440.11(2). Employee leasing companies, temporary help services, and labor pools are "help supply services compan[ies]" for purposes of chapter 440. See Caramico v. Artcraft Indus. Inc., 727 So.2d 348, 349 (Fla. 5th DCA 1999).
It is undisputed that Labor for Hire was a help supply services company that sent its employee, Saleeby, to Rocky Elson as a temporary laborer. Rocky Elson personnel supervised, instructed, and controlled Saleeby, who in turn acted in the furtherance of Rocky Elson's business. Therefore, Saleeby was Rocky Elson's "borrowed employee" under section 440.11(2) and, as such, he was precluded from recovering against Rocky Elson in tort.
Saleeby microanalysis his employment experience to fashion an argument that he was not a borrowed servant; he contends that no contract arose between Rocky Elson and Labor for Hire, because there was no meeting of the minds between the companies as to the precise job Saleeby was to perform. However, section 440.11(2) does not require this level of precision. To be entitled to immunity, an employer need only "utilize the services" of the employee of a help supply company and the employee must be "acting in furtherance of the employer's business." § 440.11, Fla. Stat. (2002). There is no dispute that in this case Saleeby crossed this immunity threshold. He was injured not while performing work, but at the end of the day after his work was completed.
Relying on Coleman v. Mini-Mac Maintenance Service, Inc., 706 So.2d 393 (Fla. 1st DCA 1998), Saleeby argues that "if a borrowed servant engages in tasks beyond that for which he is loaned, the borrowed servant relationship fails." Our reading of Coleman does not support this broad proposition.
In Coleman, Mini-Mac Maintenance Service cleaned floors for a Food World grocery store. Id. at 394. Mini-Mac was *214 hired to do "scheduled floor cleanup and [was] not under contract to clean up occasional spills." However, Mini-Mac employees would "sometimes clean up spills that occurred while they were doing routine floor maintenance if specifically asked to do so." Id. A Mini-Mac employee cleaned up a salad oil spill; later a Food World employee fell in that area. His lawsuit contended that the spill clean up had not been adequate. Mini-Mac argued that its employee would have been a borrowed servant of the grocery store at the time he cleaned up the spill, so that the employee would have been entitled to workers' compensation immunity as a fellow employer of the injured party. Id.
The first district held that the trial court properly denied summary judgment in favor of Mini-Mac on the immunity issue because questions of fact remained on whether the Mini-Mac mopper was Food World's borrowed servant. Id. at 395. Unlike this case, involving a help supply services company in the business of providing "borrowed employees" to employers, Coleman concerns a case where it is doubtful that any "borrowed employee" relationship ever arose. Mini-Mac was a garden variety independent contractor grasping at workers' compensation law to avoid liability. The case holds only that issues of fact surrounded the borrowed servant claim.
On another issue, Saleeby contended at trial that Rocky Elson was subject to tort liability under the intentional tort exception to workers' compensation immunity. See Bakerman v. Bombay Co., 961 So.2d 259 (Fla.2007). Saleeby complains that the trial court improperly charged on this issue. We find no error in the jury instruction.
The trial court instructed the jury that an employer is liable for an employee's work-related injuries, notwithstanding workers' compensation immunity, if a "reasonably prudent person would have understood" that Rocky Elson's conduct was substantially certain to result in injury. Saleeby argues that to properly instruct the jury the lower court should have used the terminology "the employer should have known." While the trial court may have not used the exact language contained in Travelers Indemnity Co. v. PCR, Inc., 889 So.2d 779, 783 (Fla.2004), the instruction was sufficient to adequately charge the jury on the relevant law.
Under the Workers' Compensation Act, immunity is lost if the "employer engaged in conduct which was substantially certain to result in injury.'" Id. at 797 (citing Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882 (Fla.1986)). "In order to prove substantial certainty, a plaintiff employee must demonstrate that the employer engaged in conduct that is at least worse than `gross negligence.'"[3]Feraci v. Grundy Marine Constr., 315 F.Supp.2d 1197, 1205 (N.D.Fla.2004) (citing Turner v. PCR, Inc., 754 So.2d 683, 686 (Fla.2000); McClanahan v. State, 854 So.2d 793 (Fla. 2d DCA 2003)).
*215 Florida adheres to an interpretation of the Workers' Compensation Act that broadly preserves "immunity in the face of sometimes egregious acts by employers and managers." Woodson v. Ivey, 917 So.2d 993, 996 (Fla. 5th DCA 2005); see also Byers v. Ritz, 890 So.2d 343, 346-47 (Fla. 3d DCA 2004). In analyzing factual scenarios against the backdrop of broad immunity, Florida courts have held employers immune from suit (1) where a supervisor refused to obtain plastic brushes because of expense, and the refusal led to the severe burning of an employee, see Emergency One, Inc. v. Keffer, 652 So.2d 1233, 1235 (Fla. 1st DCA 1995),[4] and (2) where a supervisor removed a safety switch from a lawnmower, causing the employee to be thrown from the mower and injured. See Mekamy Oaks, Inc. v. Snyder, 659 So.2d 1290, 1291 (Fla. 5th DCA 1995). The jury instruction adequately conveyed the state of the law.
The jury instruction given was consistent with the supreme court's rulings on the "substantial certainty" exception to workers' compensation immunity. In Turner, 754 So.2d at 691, the supreme court wrote that:
[The] intentional tort exception includes an objective standard to measure whether the employer engaged in conduct which was substantially certain to result in injury. This standard imputes intent upon employers in circumstances where injury or death is objectively "substantially certain" to occur.
Under this objective test, a fact finder must examine the facts of a case to "determine whether a reasonable person would understand that the employer's conduct was `substantially certain' to result in injury or death to the employee." Id. at 688; see Travelers Indem. Co., 889 So.2d at 783 (quoting Turner, 754 So.2d at 688). The standard given was not the subjective one rejected in Turner.
Finally, we conclude that the trial court did not abuse its discretion in admitting evidence of Saleeby's settlement with A-1 Roof Trusses Ltd., a previous defendant in this case. A-1 Roof Trusses manufactured the trusses involved in the accident. At trial, Saleeby called John Herring, president of A-1 Roof Trusses, as an expert witness. Herring opined that the trusses collapsed not due to a manufacturing defect, but because of the way that they were installed. Herring had first rendered this opinion when he was a defendant with a pecuniary interest in the case.
Section 90.408 excludes evidence of a settlement to prove liability; courts may, however, admit settlement-related evidence if offered for other purposes, such as proving witness bias or prejudice. See Dosdourian v. Carsten, 624 So.2d 241, 247 n. 4 (Fla.1993) (evidence of a settlement with a codefendant who remained in the case was admissible since "the jury was entitled to weigh the codefendant's actions [at trial] in light of its knowledge that such *216 a settlement has been reached."). Section 90.408 was enacted to protect against the prejudicial effect that settlement evidence may have on a jury. However, when settlement evidence goes to a witness's "motivation[ ], interest, and position" the probative value of such proof of bias outweighs the danger of prejudice. See Ehrhardt, Florida Evidence § 408.1, Fla. Stat. (2003 ed.) (citing Dosdourian, 624 So.2d at 241; § 90.403, Fla. Stat. (2006)). A witness's bias or improper motive is always an important factor to a jury's credibility determination. See Russ v. City of Jacksonville, 734 So.2d 508, 511 (Fla. 1st DCA 1999).
Here, A-1 Roof Trusses had a financial stake in the matter which could have impacted its president's expert opinion. Evidence of the prior settlement was properly admitted to show potential bias.
We have considered Saleeby's remaining points and find no error.
Affirmed.
STONE and POLEN, JJ., concur.
NOTES
[1] A `help supply services company' is defined by OSHA Standard Industry Code Industry Number 7363, as:

Establishments primarily engaged in supplying temporary or continuing help on a contract or fee basis. The help supplied is always on the payroll of the supplying establishments, but is under the direct or general supervision of the business to whom the help is furnished.
See St. Lucie Falls Prop. Owners Ass'n v. Morelli, 956 So.2d 1283, 1285 (Fla. 4th DCA 2007) (citations omitted).
[2] Section 440.11, Florida Statutes (2002), states in pertinent part, that:

(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . .
(2) The immunity from liability described in subsection (1) shall extend to an employer and to each employee of the employer which utilizes the services of the employees of a help supply services company, as set forth in Standard Industry Code Industry Number 7363, when such employees, whether management or staff, are acting in furtherance of the employer's business. An employee so engaged by the employer shall be considered a borrowed employee of the employer, and, for the purposes of this section, shall be treated as any other employee of the employer. The employer shall be liable for and shall secure the payment of compensation to all such borrowed employees as required in s. 440.10, except when such payment has been secured by the help supply services company.
[3] In 2003, the legislature amended section 440.11(1), requiring that a plaintiff-employee prove the existence of the intentional tort exception by "clear and convincing evidence." See Feraci, 315 F.Supp.2d at 1205 n. 11 (citing § 440.11(1)(b), Fla. Stat. (2003)). Additionally, the legislature changed the substance of the exception by (1) replacing the "substantial certainty" standard with an elevated "virtually certain standard," and requiring that "the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee." Id. Section 440.11(1)(b); Florida Statutes (2003), does not apply retroactively. Id.
[4] In Emergency One, the plaintiff was employed as a detailer cleaning fire trucks. 652 So.2d at 1234. As such, the plaintiff was expected to use a metal-banded detail brush and flammable lacquer thinner to clean certain places on fire trucks. Id. These places included the battery compartment which housed a live battery bearing warnings about explosions. The battery emitted flammable hydrogen gas. Id. The plaintiff requested that her supervisor purchase plastic brushes in lieu of the metal ones. Her supervisor refused due to the expense, even though the supervisor was aware that electrical arcs had previously extended from the truck's electrical sources to the metal-banded brushes. Id. While detailing a battery case, the plaintiff employee was severely burned when the metal band on her brush caused an electrical arc that ignited the lacquer thinner she was using.