3 So.3d 1078 (2009)
Albert SALEEBY, Petitioner,
v.
ROCKY ELSON CONSTRUCTION, INC., Respondent.
No. SC07-2252.
Supreme Court of Florida.
January 30, 2009.
Rehearing Denied February 25, 2009.
*1080 Brett C. Powell, Mark Hicks, and Dinah Stein of Hicks, Porter, Ebenfeld, and Stein, P.A., and Edward G. Rubinoff and Andrew M. Moss of Kutner, Rubinoff and Moss, P.A., Miami, FL, for Petitioner.
Kimberly A. Ashby of Akerman Senterfitt, Orlando, FL, for Respondent.
PER CURIAM.
We have for review the decision of the Fourth District Court of Appeal in Saleeby v. Rocky Elson Construction, Inc., 965 So.2d 211 (Fla. 4th DCA 2007), review granted, 977 So.2d 577, 2008 WL 1746024 (Fla.2008), which expressly and directly conflicts with the decision of the Third District Court of Appeal in Ellis v. Weisbrot, 550 So.2d 15 (Fla. 3d DCA 1989). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. Both sections 768.041 and 90.408, Florida Statutes (2006), prohibit the admission at trial of any evidence of settlement or dismissal of a defendant. The issue we decide is whether evidence of settlement may nevertheless be admitted to impeach a witness's testimony. We hold that the unambiguous language of these statutes admits no exceptions and that violation of the prohibition is reversible error. For the reasons explained below, we quash the Fourth District's decision.

I. FACTS AND PROCEDURAL HISTORY
In December 1999, the petitioner, Albert Saleeby, was injured when roof trusses on the construction site at which he was working collapsed on him, rendering him a paraplegic. After collecting workers' compensation benefits from his employer, Labor for Hire, a company that supplies temporary workers, Saleeby filed a negligence action against Rocky Elson Construction Co. (Elson), the construction company that installed the trusses, and A-1Roof Trusses Ltd. (A-1), the company that manufactured them.
Before trial, Saleeby deposed defendant A-1's president, John Herring, regarding his review of the jobsite and his opinion of the cause of the truss collapse. Subsequently, A-1 settled with Saleeby and was dismissed as a party defendant. Saleeby then filed a motion in limine to exclude evidence at trial of A-1's prior status as a defendant and of the settlement. The trial court entered an "Agreed Order," stating that Saleeby and Elson agreed to the exclusion of any evidence of settlement, settlement amounts, and A-1's previously having been a defendant in the suit.[1]
The suit proceeded to jury trial against Elson on the sole issue of liability, and Elson raised the affirmative defense of workers' compensation immunity. Saleeby sought to show that the collapse resulted from Elson's failure to follow safety requirements and industry standards in installing the trusses, particularly as to adequate bracing. To that end, Saleeby called John Herring, who testified regarding his observations of the accident site and what caused the trusses to collapse. He opined that the truss collapse resulted from Elson's faulty installation, not a manufacturing defect. The trial court overruled Elson's objection that Herring, who was offered as a fact witness, should be *1081 prohibited from testifying essentially as an expert witness on industry building standards and code requirements and Elson's conformity to them. However, the trial court granted Elson's motion that it be allowed to impeach Herring with evidence that A-1 had previously been a defendant and had settled with Saleeby. After hearing argument, the circuit court determined that the evidence went to the witness's bias because Herring's trial testimony was based on the opinions he formulated when A-1 was a defendant in the case. Accordingly, during cross-examination, Herring admitted that A-1 had previously been a defendant in the lawsuit, that money was paid to settle the suit, and that Herring had subsequently agreed to testify for Saleeby. After hearing all of the evidence at trial, the jury found that Saleeby was not entitled to recover damages from Elson because the company was immune from liability in tort under Florida's workers' compensation statute. See § 440.11(1), Fla. Stat. (1999).
In his appeal to the Fourth District, Saleeby argued, as he did in the trial court, that sections 768.041 and 90.408, Florida Statutes (2006), prohibited the admission of evidence of settlement and that violation of these statutes is clear reversible error. The district court, however, held that the trial court did not abuse its discretion in admitting the evidence because "Herring had first rendered this opinion when he was a defendant with a pecuniary interest in the case." Saleeby, 965 So.2d at 215. The Fourth District reasoned as follows:
Section 90.408 excludes evidence of a settlement to prove liability; courts may, however, admit settlement-related evidence if offered for other purposes, such as proving witness bias or prejudice. See Dosdourian v. Carsten, 624 So.2d 241, 247 n. 4 (Fla.1993) (evidence of a settlement with a codefendant who remained in the case was admissible since "the jury was entitled to weigh the codefendant's actions [at trial] in light of its knowledge that such a settlement has been reached."). Section 90.408 was enacted to protect against the prejudicial effect that settlement evidence may have on a jury. However, when settlement evidence goes to a witness's "motivation[ ], interest, and position" the probative value of such proof of bias outweighs the danger of prejudice. See Ehrhardt, Florida Evidence § 408.1, Fla. Stat. (2003 ed.) (citing Dosdourian, 624 So.2d at 241; § 90.403, Fla. Stat. (2006)). A witness's bias or improper motive is always an important factor to a jury's credibility determination. See Russ v. City of Jacksonville, 734 So.2d 508, 511 (Fla. 1st DCA 1999).
Here, A-1 Roof Trusses had a financial stake in the matter which could have impacted its president's expert opinion. Evidence of the prior settlement was properly admitted to show potential bias.
Saleeby, 965 So.2d at 215-16. Thus, finding no merit in this or any of Saleeby's other claims, the district court affirmed the adverse judgment in the case.

II. CONFLICT JURISDICTION
Saleeby petitioned this Court for review, alleging express and direct conflict with Ellis v. Weisbrot, 550 So.2d 15 (Fla. 3d DCA 1989), regarding the admissibility of evidence of settlement at trial to demonstrate the bias of a testifying witness.[2] As *1082 explained below, these cases are in express and direct conflict regarding the admissibility of evidence of settlement at trial to demonstrate the bias of a testifying witness, and this Court has jurisdiction. See art. V, § 3(b)(3), Fla. Const.
In Ellis, Darryl Ellis sued Jefferson Stores, Inc., and Drs. Kirsner and Weisbrot for dental malpractice. Ellis voluntarily dismissed Dr. Kirsner in return for a waiver of fees and costs but nevertheless called him as a witness at trial. Id. at 16. During cross-examination, Dr. Kirsner admitted that he had previously been a defendant in the case. Id. The trial court denied Ellis's immediate motion for mistrial and Ellis's objections to defense counsel's continual references to Dr. Kirsner's former party defendant status throughout the cross-examination. On appeal, the Third District reversed the jury verdict and remanded for a new trial. Id. Citing section 768.041's prohibition on informing a jury that a witness was a prior defendant in the case, the district court held that "[a]dmission of such testimony, even to attack the former defendant's credibility, is clear error and requires reversal." Id.
In both cases, the plaintiff dismissed a defendant from the case and then called the former defendant to testify. In both cases, the trial court permitted the remaining defendant in the case to use evidence of the witness's former party status to impeach the witness in contravention of a statute. Finally, in both cases, the district courts were presented with the same question of law regarding the admissibility of such evidence to impeach a witness, but they reached opposite conclusions. The Fourth District found no error and held that despite a statutory prohibition, the evidence was admissible to show witness bias, Saleeby, 965 So.2d at 216, but the Third District held that admission of such evidence to demonstrate witness bias was "clear error," requiring reversal. Ellis, 550 So.2d at 16.

III. ANALYSIS
Petitioner argues that the trial court's admission of evidence of settlement violated clear statutory law barring such admission for any purpose. Respondent contends, however, that an unwritten exception to the prohibition applies to the facts of this case. As we explain below, the question of whether evidence that a previous defendant settled out of a lawsuit is admissible for purposes of impeachment is readily answered by reading the plain language of the applicable statutes.
"It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis." Knowles v. Beverly Enterprises-Fla., Inc., 898 So.2d 1, 5 (Fla.2004). Thus, to determine the meaning of a statute, we first look to its plain language. McKenzie Check Advance of Fla., LLC v. Betts, 928 So.2d 1204, 1208 (Fla.2006). When the statute is clear and unambiguous, "there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)).
Two Florida statutes specifically address the issue of disclosing evidence of settlement to the jury. Section 768.041, Florida Statutes (2006) provides as follows:
(1) A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.

*1083 (2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on her or his behalf, has delivered a release or covenant not to sue to any person, firm or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
(3) The fact of such a release or covenant not to sue, or that any defendant has been dismissed by order of the court shall not be made known to the jury.

(Emphasis added.) The meaning of paragraph (3) of the statute could not be clearer. The statute plainly and unambiguously prohibits disclosure to the jury of any evidence of settlement or that a former defendant was dismissed from the suit. Similarly, another statute provides:

Evidence of an offer to compromise a claim which was disputed as to validity or amount, as well as any relevant conduct or statements made in negotiations concerning a compromise, is inadmissible to prove liability or absence of liability for the claim or its value.

§ 90.408, Fla. Stat. (2006) (emphasis added). The meaning of this statute is equally clear. No evidence of settlement is admissible at trial on the issue of liability.
These statutes promote Florida's public policy favoring settlement by excluding such prejudicial evidence at trial. See City of Coral Gables v. Jordan, 186 So.2d 60, 63 (Fla. 3d DCA), aff'd, 191 So.2d 38 (Fla.1966). The Fourth District acknowledged this purpose in Saleeby, but nevertheless carved out an exception where the evidence is "offered for other purposes, such as proving witness bias or prejudice." Saleeby, 965 So.2d at 215. The district court erroneously cites our decision in Dosdourian v. Carsten, 624 So.2d 241 (Fla.1993), as supportive of this principle.
In Dosdourian, we answered a certified question regarding whether a nonsettling defendant may inform the jury that the plaintiff reached a settlement with another defendant who was required to continue to participate in the law suit. Dosdourian, 624 So.2d at 242. Dosdourian introduced the settling defendant's deposition at trial, but she did not testify. Further, Carsten's motion to dismiss her as a defendant was denied. The factual scenario was closely akin to a so-called "Mary Carter Agreement," which we previously had held should be disclosed to the jury. See Ward v. Ochoa, 284 So.2d 385 (Fla.1973).[3] Before addressing the question, we first reconsidered the validity of Mary Carter Agreements and described a litany of unfair and unethical practices fostered by such agreements, including that they require lawyers to "make misrepresentations to the court and to the jury in order to maintain the charade of an adversarial relationship." Dosdourian, 624 So.2d at 244. Further, we acknowledged that our solution in Ward of requiring disclosure of *1084 such agreements to the jury "can be a double-edged sword to the extent that it conveys a message to the jury that at least one of the defendants felt that the plaintiff's claim was meritorious." Dosdourian, 624 So.2d at 245. Accordingly, to "eliminate the sinister influence" of such agreements we "outlaw[ed] their use" and "include[d] within our prohibition any agreement which requires the settling defendant to remain in the litigation, regardless of whether there is a specified financial incentive to do so." Id. at 246.
Because our prohibition of Mary Carter Agreements was prospective in nature, we necessarily addressed the facts in Dosdourian "upon the premise that the settlement agreement was legal" under our prior precedent. Id. Carsten had sued DeMario and Dosdourian in negligence but settled with DeMario before trial and required that she remain a defendant participating in the litigation. Id. at 242. The trial court ruled that evidence of settlement could not be disclosed to the jury. On review here, Carsten argued that evidence of the settlement agreement fell within section 768.041(3)'s prohibition on disclosure of settlements to the jury, and Dosdourian countered that "the jury was still misled by not knowing that Carsten had settled his claim against DeMario while DeMario remained in the litigation." Id. at 247. We determined that the settlement agreement in the case requiring the defendant to continue to participate fell within "the `Mary Carter' line of cases" that required disclosure to the jury. We further explained the prejudice in such a situation as follows:
[E]ven though a defendant may be required to remain in the litigation, once that defendant has agreed to settle there is simply no longer any incentive to actively defend the case. In fact, it is no longer even in the settling defendant's interest to put forth further effort or incur additional expense in the litigation. Simple inaction on the part of one defendant can adversely affect the codefendant.

Id. (emphasis added). Then, in a footnote, we added that "where, as here, there was a settlement, the jury was entitled to weigh the codefendant's actions in light of its knowledge that such a settlement has been reached." Id. at 247 n. 4. The Fourth District cited this footnote to support its determination of an exception to the prohibitory statutes at issue here.
As should be apparent from the foregoing discussion, our decision in Dosdourian addressed an entirely different situation than the one presented here. We did not apply section 768.041(3), nor did we create an exception to it. We expressly found the settlement agreement requiring the defendant to remain and participate in the litigation was a Mary Carter style agreement, subject to our prior requirement of disclosure. In Dosdourian, however, we completely prohibited the use of such agreements prospectively. Accordingly, our decision requiring admission of settlement evidence in Dosdourian in no way permits the evidence of settlement to be entered in this case. In the case on review, the settling defendant was dismissed from the case and did not continue to participate as a defendant in the case. None of the concerns of fraud and unethical conduct propagated by Mary Carter Agreements are present here. Rather, the facts of the case fall entirely within the purview and prohibitions of sections 768.041 and 90.408.
As stated previously, these statutes promote Florida's public policy to encourage settlement. Although factually distinguishable from this case, Jordan demonstrates the prejudice that results from the erroneous admission of evidence of settlement. There, a passenger on a motor scooter was killed when it collided with an *1085 automobile at an intersection where a city police officer was directing traffic. Jordan, 186 So.2d at 61. The decedent's mother sued the city. At trial, the city sought to show that the death resulted solely from the negligence of the scooter's operator. The plaintiff called the driver to testify and during redirect elicited testimony that the city had settled with him to show that the witness had no interest in the litigation. Id. at 61-62. Citing the predecessor statute to section 768.041, the district court stated:
Section 54.28, Fla. Stat., F.S.A. prohibits the revelation to the jury of a settlement by an injured party with one of several tort feasors. It would seem to be just as damaging to a fair trial to permit the injured party to reveal to the jury that the alleged tort feasor has settled with another injured party in the same accident.
Id. at 62 (footnote and citation omitted).[4] The Third District explained that informing the jury of the settlement in the case was "immediately and completely destructive to the possibility of a fair trial between the plaintiff and the defendant." Id. Accordingly, the appellate court found that admission of the evidence of settlement was reversible error and remanded for new trial. Id. at 64.
Jordan and other cases fully illustrate the prejudice that results when sections 768.041 and 90.408 are violated: "[I]t is a practical impossibility to eradicate from the jury's minds the considerations that where there has been a payment there must have been liability." Jordan, 186 So.2d at 63 (quoting Fenberg v. Rosenthal, 348 Ill.App. 510, 109 N.E.2d 402, 405 (1952)); see, e.g., Ricks v. Loyola, 822 So.2d 502, 508 (Fla.2002) (affirming trial court's grant of new trial where counsel made an "empty chair" argument implying a settlement was reached with others); Muhammad v. Toys "R" Us, Inc., 668 So.2d 254, 256 (Fla. 1st DCA 1996) (reversing and remanding for new trial where counsel's arguments suggesting a settlement with others were "patently prejudicial and may have influenced the jury to return a verdict in favor of Toys `R' Us"); Henry v. Beacon Ambulance Serv., Inc., 424 So.2d 914, 916 (Fla. 4th DCA 1983) (reversing and remanding for new trial where disclosure of settlement to jury violated section 768.041(3)).
From the foregoing discussion, it is clear that violation of sections 768.041 and 90.408 is reversible error. To escape the consequence of this conclusion, respondent attempts to distinguish this case. Respondent argues (1) that any error in this case was invited, and (2) that the statutes are not violated if the former defendant is called to testify as an expert witness. We address these arguments in turn.
As explained previously, Saleeby obtained an agreed order to prohibit admission of any evidence of settlement or former defendant status. Subsequently, however, the trial court reversed itself, ruling such evidence admissible. The trial court agreed, however, that Saleeby's objection was not waived if he chose to minimize the impact of the evidence by admitting it himself. Accordingly, on direct examination, counsel for Saleeby elicited from Herring the fact that A-1 was a party to the case at the time he gave his deposition. Then, on cross-examination, Herring admitted that A-1 had paid to settle with Saleeby and had been dismissed as a defendant. As is clear from our decision in Sheffield v. Superior Insurance *1086 Co., 800 So.2d 197 (Fla.2001), Saleeby did not waive his objection, and his presentation of the contested evidence did not constitute invited error. See Sheffield, 800 So.2d at 203 ("We hold that once a trial court makes an unequivocal ruling admitting evidence over a movant's motion in limine, the movant's subsequent introduction of that evidence does not constitute a waiver of the error for appellate review.").
Second, Elson claims that sections 768.041 and 90.408 do not apply when the former defendant testifies as an expert witness for the plaintiff. In this case, Herring was called as a fact witness. The trial court overruled Elson's objection that Herring was testifying essentially as an expert witness by opining about code requirements and the cause of the accident. The circuit court, however, allowed Elson to impeach Herring with evidence of the settlement. We find that the plain language of the statutory provisions at issue here do not prohibit the admission of evidence based on how the evidence comes in. That is, the prohibition is not imposed only on witnesses or categories of witnesses. The statutes instead expressly prohibit the facts from being transmitted to the jury at all. Accordingly, we reject Elson's proposed expert witness exception to these statutes. Based on our previous discussion, we also reject without further discussion Elson's attendant suggestion that Dosdourian required the disclosure.

IV. CONCLUSION
As explained above, we find that the plain language of sections 768.041(3) and 90.408 expressly prohibits the admission at trial of evidence of settlement and that a defendant has been dismissed from the suit. These statutes do not contain an implicit exception permitting such evidence to be used for impeachment purposes, and the district court erroneously relied on our opinion in Dosdourian in finding one. Accordingly, we quash the Fourth District's decision in this case and remand with directions that petitioner be granted a new trial. We approve the Third District's decision in Ellis.
It is so ordered.
QUINCE, C.J., PARIENTE and LEWIS, JJ., and ANSTEAD, Senior Justice, concur.
CANADY, J., dissents with an opinion.
POLSTON, J., dissents with an opinion, in which WELLS, J., concurs.
CANADY, J., dissenting.
I dissent from the majority's decision to quash the Fourth District Court of Appeal's decision. For the reasons explained below, I would hold that the evidence concerning A-1's prior status as a party defendant was properly admitted by the trial court. I would also hold that although the trial court erred in admitting evidence concerning the settlement, this error was harmless.
Evidence of A-1's prior status as a defendant was admissible to attack the credibility of John Herring by showing that he was biased. Section 90.608(2), Florida Statutes (2006), expressly authorizes the introduction of evidence to attack the credibility of a witness by "[s]howing that the witness is biased." This statutory provision should not be ignored in the analysis of the evidentiary question at issue here.
In my view, section 768.04(3), Florida Statutes (2006), does not embody a rule that trumps all other relevant rules of evidence. Although Dosdourian v. Carsten, 624 So.2d 241 (Fla.1993), dealt with a fact pattern dissimilar to this case, it nonetheless clearly established the point that the rule of exclusion in section 768.041(3) is not invariably applied in derogation of other applicable rules or principles of law. *1087 Here, section 768.041(3) should not be applied in derogation of section 90.608(2).[5]
The evidence of A-1's prior status as a defendant was highly probative on the issue of Herring's credibility as an expert witness on causation. In evaluating the credibility of expert opinion testimony, it is unquestionably relevant that the opinion testimony was first given in a deposition when A-1, the corporation of which Herring is president, was a defendant in the case. At the time of his deposition testimony, Herring had an obvious motivation to give testimony assigning blame to a defendant other than A-1. And he also had a clear motivation when testifying at the trial not to forswear his prior sworn deposition testimony.
It is true that the simple fact that A-1 was the manufacturer of the trusses  a circumstance known to the jury  also pointed to bias on the part of Herring as A-1's president. But A-1's status as a defendant pointed to a more intense motivation on Herring's part to give testimony that was unfavorable to Elson. The trial court did not abuse its discretion in concluding that precluding the jury from hearing evidence regarding A-1's prior status as a defendant would have unfairly compromised the jury's ability to judge the credibility of Herring. A reasonable judge could decide that the "probative value" of the evidence of A-1's prior status as a defendant was not "substantially outweighed by the danger of unfair prejudice." § 90.403, Fla. Stat. (2006).
The exposure of the fact that A-1 had somehow exited the lawsuit necessarily accompanied the exposure of Herring's bias arising from A-1's prior status as a defendant. Assuming that the fact that A-1 had exited the lawsuit falls within the scope of section 768.041(3), I would nevertheless hold that allowing the jury to consider the highly probative evidence of Herring's bias was not error. By the choice of Herring as an expert witness, the plaintiff unilaterally created the situation in which a choice was required between applying section 768.041(3) and applying section 90.608(2). I would conclude that a party who chooses to present the expert opinion testimony of a witness whose credibility is subject to impeachment for bias should not be permitted to use section 768.041(3) as a cloak to hide from the jury facts relevant to the bias of that witness.
The evidence of the settlement itself is a different matter. The fact of the settlement is not relevant to the credibility of Herring. The existence of the settlement has no probative value regarding Herring's bias. An inference cannot reasonably be drawn that Herring would harbor a bias either in favor of Saleeby or against Elson based on the bare fact that A-1 had been constrained to pay a sum of money to Saleeby in settlement of a claim brought by Saleeby against A-1. Why would it be thought that Herring would be biased in favor of someone who had sued his company? Why would it be thought that a settling defendant would be biased against a non-settling defendant? The inference of bias from the bare fact of the settlement is irrational.
And the holding in Dosdourian provides no support for the admission of the settlement agreement. The basis for the decision in Dosdourian was the fact that the settling defendant had remained in the lawsuit. In concluding that the settlement agreement was admissible, the Court observed that "`the integrity of our justice system is placed in question when a jury charged to determine the liability and damages of the parties is deprived of the *1088 knowledge that there is, in fact, no actual dispute between two out of three of the parties.'" Dosdourian, 624 So.2d at 247 (quoting Dosdourian v. Carsten, 580 So.2d 869, 872 (Fla. 4th DCA 1991)). The Court reasoned that "the jury was entitled to weigh the [settling] codefendant's actions in light of its knowledge that such a settlement has been reached." Id. n. 4. The rationale of Dosdourian thus has no application here because A-1, the settling codefendant here, did not remain in the lawsuit.
I therefore agree with the majority that the trial court erred by admitting evidence regarding the settlement. But I would not treat that error as per se reversible. I would disapprove Ellis v. Weisbrot, 550 So.2d 15 (Fla. 3d DCA 1989), to the extent that it suggests that the erroneous admission of evidence of a settlement is not subject to harmless error analysis. See BCK Land, Inc. v. Cook, 119 So.2d 717, 719 (Fla. 2d DCA 1960) (finding harmless error regarding admission of settlement evidence in violation of section 54.28, Florida Statutes (1957), the predecessor statute of section 768.041).
A reviewing court may "set aside or reverse a judgment, or grant a new trial on the basis of [erroneously] admitted or excluded evidence" only "when a substantial right of the party [appealing] is adversely affected." § 90.104(1), Fla. Stat. (2006). When a judgment is challenged based on "the improper admission or rejection of evidence," the judgment will be reversed only if "after an examination of the entire case" the reviewing court concludes "that the error complained of has resulted in a miscarriage of justice." § 59.041, Fla. Stat. (2006). Accordingly, Saleeby is entitled to prevail on appeal only if a substantial right of Saleeby has been adversely affected and a miscarriage of justice has occurred.
Saleeby's case turned on whether Elson was immune from tort liability as an employer pursuant to section 440.11(1), Florida Statutes (1999). Saleeby contended that Elson had lost its immunity because it engaged in conduct which was substantially certain to result in injury to Saleeby. See Turner v. PCR, Inc., 754 So.2d 683, 691 (Fla.2000) (holding that the intentional tort exception to employer immunity "includes an objective standard to measure whether the employer engaged in conduct which was substantially certain to result in injury").[6]
To obtain relief against Elson, Saleeby had to show that a reasonable person should have known or would have understood that Elson's conduct in temporarily bracing the trusses was substantially certain to cause injury or death. See Turner, 754 So.2d at 688. Saleeby's strategy at trial was to show that Elson did not fully comply with standard requirements for the temporary bracing of trusses. Accordingly, expert testimony was presented that, for example, Elson did not in all instances use the materials recommended for particular parts of the temporary G23 bracing.[7] The experts testified that the closer one adheres to the standards the less likely the trusses are to collapse. It was also shown at trial that Mr. Elson acknowledged that before commencing work, he had not read the standard summary sheet that accompanies all trusses and which contains guidance regarding truss installation. That summary sheet warns that failure to follow *1089 its recommendations can result in injury. The summary sheet specifically recommends that an engineer design the temporary bracing for trusses exceeding a specified length. At trial it was shown that neither the general contractor (Tektonica) nor Elson followed this recommendation.
The evidence at trial, however, showed that the general contractor hired Elson to install the trusses for the arena and supplied all materials for their installation. Mr. Elson testified that he is an expert in truss installation. He and his crew had years and even decades of experience installing trusses, including experience installing trusses of the size used in the arena. The evidence established that Mr. Elson and his crew had never previously experienced a roof truss collapse. According to their testimony, they applied their knowledge and years of experience in installing the trusses with the temporary bracing throughout the arena. The testimony concerning this prior experience went uncontradicted. It was also undisputed that no other trusses in the arena collapsed. Further, after the accident Elson's crew viewed the truss manufacturer's videotape regarding installation, and then they installed without incident the replacement trusses the same way they had previously installed all of the other trusses in the arena.
Accordingly, there was no prior similar accident, no effort by Elson to conceal a danger from the workers, and no other circumstance which provided a basis for the jury to conclude that Elson had engaged in conduct that should be treated as an intentional tort. In sum, Saleeby failed to present evidence from which the jury could conclude that Elson "engaged in conduct which was substantially certain to result in injury," Turner, 754 So.2d at 691, a conclusion which could only be supported by "a showing greater than `gross negligence,'" Id. at 687 n. 4.
Based on the record here, there is no basis to conclude that the trial court's error in admitting evidence regarding the settlement was a harmful error. The requisite prejudice to support overturning the judgment based on the jury's verdict can be established neither under a harmless error standard requiring a showing of a reasonable probability of a result more favorable to the appellant if the error had not occurred, see Damico v. Lundberg, 379 So.2d 964, 965 (Fla. 2d DCA 1979), nor under a standard requiring a showing that the appellant might have obtained a more favorable result but for the error, see National Union Fire Ins. Co. of Pittsburgh v. Blackmon, 754 So.2d 840, 843 (Fla. 1st DCA 2000).
I therefore would approve the result reached by the Fourth District.
POLSTON, J., dissenting.
I respectfully dissent. Unlike the majority, I do not believe that sections 90.408 and 768.041, Florida Statutes (2006), prohibit the admission of evidence of settlement or dismissal of a defendant when such evidence is offered to demonstrate that a witness is biased or prejudiced. As Professor Ehrhardt explains,
Evidence of prior settlements or offers to compromise is admissible to impeach a witness or to show the witness is biased or prejudiced. In Dosdourian v. Carsten[, 624 So.2d 241 (Fla.1993),] the court imposed an affirmative obligation to admit evidence that a defendant remaining in the action had settled the matter so that the jury was aware of the motivations, interest, and position of the settling party. Although sections 46.015 and 768.041(3) of the Florida Statutes contain broad language prohibiting any admissibility of evidence of a release or settlement which was earlier construed to bar evidence of a settlement *1090 offered to prove bias or interest of the witness, the Florida Supreme Court implicitly overruled those cases in Dosdourian.

Charles W. Ehrhardt, Florida Evidence, § 408.1, at 308-09 (2008) (footnotes omitted).
More specifically, section 90.408, Florida Statutes (2006), provides:
Evidence of an offer to compromise a claim which was disputed as to validity or amount, as well as any relevant conduct or statements made in negotiations concerning a compromise, is inadmissible to prove liability or absence of liability for the claim or its value.

(Emphasis added.) Thus, the plain language of section 90.408 prohibits the admission of evidence of compromises and offers of compromise only when such evidence is offered "to prove liability or absence of liability for the claim or its value." § 90.408, Fla. Stat. And, under Florida's Evidence Code and this Court's precedent, evidence that is inadmissible when offered for one purpose may be admissible when offered for a different purpose. See § 90.107, Fla. Stat. (2006) ("When evidence that is admissible as to one party or for one purpose, but inadmissible as to another party or for another purpose, is admitted, the court, upon request, shall restrict such evidence to its proper scope and so inform the jury at the time it is admitted."); Breedlove v. State, 413 So.2d 1, 6 (Fla.1982) ("Merely because a statement is not admissible for one purpose does not mean it is inadmissible for another purpose."). Therefore, while evidence of a settlement is inadmissible to prove liability or the value of a claim pursuant to section 90.408, such evidence is admissible for other purposes, such as to prove the bias or prejudice of a witness. See Bankers Trust Co. v. Basciano, 960 So.2d 773, 780 (Fla. 5th DCA 2007) ("If the evidence is offered for another purpose, the evidence is not barred by section 90.408 and will be admissible if it is relevant to prove a material fact or issue, subject to section 90.403."); Wolowitz v. Thoroughbred Motors, Inc., 765 So.2d 920, 925 (Fla. 2d DCA 2000) ("Section 90.408 excludes evidence of settlement negotiations only when the evidence is offered to prove liability, the absence of liability, or value. Thus, evidence of settlement negotiations is admissible to establish other relevant facts."); see also Agan v. Katzman & Korr, P.A., 328 F.Supp.2d 1363 (S.D.Fla.2004) (holding that settlement documents were admissible under both section 90.408 and Federal Rule of Evidence 408 because the documents were offered not to establish liability, but to establish violation of consumer credit laws).[8] "The concept of limited admissibility applies to evidence of settlement and compromise negotiations." Ehrhardt, § 408.1, at 309.
In contrast to section 90.408, section 768.041 includes a more general prohibition against admitting evidence of a settlement. Specifically, section 768.041(3), Florida Statutes (2006), provides that "[t]he fact of such a release or covenant not to sue, or that any defendant has been *1091 dismissed by order of the court shall not be made known to the jury." However, this Court in Dosdourian, 624 So.2d at 247, expressly rejected the argument that section 768.041(3) prohibited the jury from knowing that a plaintiff had settled his claim against one of the defendants while that defendant remained in the litigation. In Dosdourian, the plaintiff introduced the settling defendant's deposition at trial, a deposition which had been taken before any settlement was reached. Dosdourian, 624 So.2d at 242. And this Court determined that "the jury was entitled to weigh the [settling] codefendant's actions in light of its knowledge that such a settlement has been reached." Id. at 247 n. 4. Thus, this Court in Dosdourian held that an exception to the general prohibition of section 768.041(3) exists when the otherwise inadmissible evidence is offered to prove bias or prejudice.
In light of the above, I would conclude that sections 90.408 and 768.041(3) do not prohibit the admission of evidence of a settlement or dismissal of a defendant when such evidence is offered to prove a witness's bias or prejudice. Accordingly, I would approve the Fourth District's decision in Saleeby v. Rocky Elson Construction, Inc., 965 So.2d 211 (Fla. 4th DCA 2007), and disapprove the Third District's decision in Ellis v. Weisbrot, 550 So.2d 15 (Fla. 3d DCA 1989). Thus, I respectfully dissent.
WELLS, J., concurs.
NOTES
[1] Saleeby originally named the general contractor, Tektonica-USA, Inc., as another defendant in the suit. Saleeby, however, also settled with this contractor, and both Saleeby's motion in limine and the trial court's order included prohibition of admission of these facts at trial.
[2] Besides the conflict issue, Saleeby raises other issues in his brief. Although we have jurisdiction, we have determined to not address them. See State v. T.G., 800 So.2d 204, 210 n. 4 (Fla.2001) ("[O]nce the Court grants jurisdiction, it may, in its discretion, address other issues properly raised and argued before the Court.").
[3] We described a "Mary Carter Agreement" as follows:

A "Mary Carter Agreement," however, is basically a contract by which one co-defendant secretly agrees with the plaintiff that, if such defendant will proceed to defend himself in court, his own maximum liability will be diminished proportionately by increasing the liability of the other co-defendants. Secrecy is the essence of such an arrangement, because the court or jury as trier of the facts, if apprised of this, would likely weigh differently the testimony and conduct of the signing defendant as related to the non-signing defendants. By painting a gruesome testimonial picture of the other defendant's misconduct or, in some cases, by admissions against himself and the other defendants, he could diminish or eliminate his own liability by use of the secret "Mary Carter Agreement."
Ward, 284 So.2d at 387.
[4] Section 54.28, Florida Statutes (1963), was subsequently renumbered as section 768.041 and amended.
[5] Section 90.408, Florida Statutes (2006), which deals with settlement offers and negotiations  as distinct from settlement agreements  has no application in the instant case.
[6] Saleeby was injured in 1999. The Legislature later codified a statutory intentional tort exception that established a virtual certainty standard that does not apply here. See § 440.11(1), Fla. Stat. (2003).
[7] For example, for the cleats Elson used one-by-four boards and eight-penny nails, not two-by-fours and sixteen-penny nails. Elson testified that in his experience this nevertheless met the industry standard.
[8] The similar federal evidentiary rule explains that the prohibition against admitting evidence of compromises or offers to compromise when offered to prove liability does not prohibit the admission of such evidence when offered to prove a witness is biased or prejudiced. Fed.R.Evid. 408(b) ("This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution."); see also Reichenbach v. Smith, 528 F.2d 1072, 1075 (5th Cir.1976) (emphasizing that rule 408 prohibits evidence of a compromise to prove liability, but does not prohibit such evidence to prove the bias or prejudice of a witness).